## VAN WIE v. UNITED STATES.

Civ. No. 403.

District Court, N. D. Iowa, E. D.

April 3, 1948.

24

Lee W. Elwood and Frank D. Elwood, both of Cresco, Iowa, for plaintiff.

T. E. Diamond, U. S. Dist. Atty., of Sheldon, Iowa, and Franklin E. Gill, Asst. U. S. Dist. Atty., of Sioux City, Iowa, for defendant.

GRAVEN, District Judge.

Action under the Federal Tort Claims Act. In this case, the plaintiff as administratrix of the Estate of Edward C. Van Wie, Deceased, seeks to recover for the claimed wrongful death of the decedent, Edward C. Van Wie, and for damages to a motor vehicle owned by the decedent. The action is brought under the Federal Tort Claims Act, §§ 401–424, 28 U.S.C.A. §§ 921–946. The damages claimed arose out of a collision between a motor vehicle owned and operated by the decedent and a motor vehicle owned and operated by one Nicholas Klein, a rural mail carrier, employed by the United States. The collision took place in Chickasaw County, Iowa, on May 23, 1946. The decedent died on June 22, 1946, as a result of injuries received in the collision. The decedent, at the time of his death, was a resident of the State of Wisconsin. He left surviving him, his widow, Josephine E. Van Wie, a resident of the State of Wisconsin, and an adult daughter who was and is a resident of the State of Illinois. The plaintiff, Josephine E. Van Wie, was, by the District Court of Iowa in and for Chickasaw County, appointed administratrix within the State of Iowa of the estate of the decedent.

The pertinent portions of the Federal Tort Claims Act involved are as follows:

28 U.S.C.A. § 931 (a): "Subject to the provisions of this chapter, the United States district court for the district wherein the plaintiff is resident or wherein the act or omission complained of occurred, * * *, sitting without a jury, shall have exclusive jurisdiction to hear, determine, and render judgment on any claim against the United States, for money only, accruing on and after January 1, 1945, on account of damage to or loss of property or on account of personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant for such damage, loss, injury, or death in accordance with the law of the place where the act or omission occurred. Subject to the provisions of this title, the United States shall be liable in respect of such claims, to the same claimants, in the same manner, and to the same extent, as a private individual under like circumstances, except that the United States shall not be liable

for interest prior to judgment, * * *. Costs shall be allowed in all courts to the successful claimant to the same extent as if the United States were a private litigant, except that such costs shall not include attorneys' fees.

"(b) The judgment in such an action shall constitute a complete bar to any action by the claimant, by reason of the same subject matter, against the employee of the Government whose act or omission gave rise to the claim. * * *" 28 U.S.C.A. § 932—"In actions under this subchapter, the forms of process, writs, pleadings, and motions, and the practice and procedure, shall be in accordance with the rules promulgated by the Supreme Court pursuant to section 723b and 723c of this title; and the same provisions for counterclaim and set-off, for interest upon judgments, and for payment of judgments, shall be applicable as in cases brought in the United States district courts under section 41(20), 250(1), (2), 251, 254, 257, 258, 287, 289, 292, 761-765 of this title."

■ The Federal Tort Claims Act constituted Title IV of the Legislative Reorganization Act of 1946. The purpose of Title IV was to relieve Congress of the burden of determining the merits of tort claims against the United States. State of Maryland v. United States, 4 Cir., 1947, 165 F.2d 869, 872. Under the Act, the standards and tests of the state where the alleged wrongful or negligent act was committed are to be used to determine whether a claim has been established upon which recovery can be allowed and the nature and extent of the recovery. State of Maryland v. United States, 4 Cir., 1947, 165 F.2d 869, 871.

In the present case, it is the claim of the United States that the plaintiff cannot maintain this action for the reason that she is not the real party in interest under the provisions of Rule 17(a), Federal Rules of Civil Procedure. 28 U.S.C.A. following section 723c. It is the claim of the United States that the plaintiff is not the real party in interest because of the relation of two insurance carriers to the recovery claimed.

The decedent in the present case was employed as a traveling salesman by the Kremers-Urban Company, a Wisconsin corporation with its principal place of business at Milwaukee, Wisconsin. The decedent and his employer were under the provisions of the Wisconsin Workmen's Compensation Act. Section 102.29(1) (a) (b) and (2) of the Wisconsin Workmen's Compensation Act provide as follows: "(1) (a) The making of a claim for compensation against an employer or compensation insurer for the injury or death of an employe shall not affect the right of the employe or his personal representative to make claim or maintain an action in tort against any other party for such injury or death, but the employer or his insurer shall be entitled to reasonable notice and opportunity to join in such action. If they or either of them join in such action, they shall be entitled to repayment of the amount paid by them as compensation as a first claim upon the net proceeds of such action (deducting the reasonable costs of collection) in excess of one-third of such net proceeds, which shall be paid to the employe in all cases.

"(b) The commencement of an action by an employe or his dependents against a third party for damages by reason of an injury to which sections 102.03 to 102.64 are applicable, or the adjustment of any such claim, shall not affect the right of the injured employe or his dependents to recover compensation, but any amount recovered by the injured employe or his dependents from a third party shall be applied as follows: Reasonable costs of collection shall be deducted; then one-third of the remainder shall in every case belong to the injured employe or his dependents, as the case may be; the remainder or so much thereof as is necessary to discharge in equal amount the liability of the employer and the insurer for compensation shall be paid to such employer or insurer; and any excess shall belong to the injured employe or his dependents.

"(2) An employer or compensation insurer who shall have paid a lawful claim under this chapter for the injury or death of an employe shall have a right to maintain an action in tort against any other party responsible for such injury or death. If reasonable notice and opportunity to be represented in such action by counsel shall

have been given to the compensation beneficiary, the liability of such other party to such compensation beneficiary shall be determined in such action as well as his liability to the employer and insurer. If recovery shall be had against such other party, by suit or otherwise, the compensation beneficiary shall be entitled to any amount recovered over and above the amount that the employer and insurer have paid or are liable for in compensation, after deducting reasonable costs of collection, and in no event shall the compensation beneficiary be entitled to less than one-third of the amount recovered from the third party, less the reasonable costs of collection. Settlement of such claims and the distribution of the proceeds therefrom must have the approval of a court or of the industrial commission."

The Kremers-Urban Company carried workmen's compensation insurance in accordance with and as provided by the provisions of the Wisconsin Act. That insurance was carried with the Employees' Mutual Insurance Company of Wausau, Wisconsin. In accordance with the provisions of the Wisconsin Act, that insurance carrier paid medical bills of the decedent in the amount of $300, hospital expenses in the amount of $341.95, ambulance expense in the amount of $3.60, and paid $300 toward the funeral expense of $575. The death benefit under the Wisconsin Act was $7,400 payable in monthly installments. That benefit was and is payable to Josephine E. Van Wie as widow. The insurance carrier assumed liability for the payment of the death benefit and has been paying Josephine E. Van Wie monthly payments thereto at the rate of $80.16 per month since shortly after the death of the decedent. The insurance policy in question was not introduced in evidence and its terms and provisions do not appear. It is the claim of the United States that under the provisions of the Wisconsin Act the insurance carrier is entitled to two-thirds of the recovery of the wrongful death and the items connected therewith and that, as to such, the plaintiff is not the real party in interest. The insurance carrier is not a party to the action and has not asked to intervene herein in this action, nor otherwise asserted in this action any claim to the recovery herein.

Workmen's compensation is purely statutory and not known to common law. Provisions for an employer having any rights against third parties growing out of the payment of workmen's compensation must be found within the provisions of the statute. Albert A. Albrecht Co. v. Whitehead & Kales Irons Works, 1918, 200 Mich. 109, 166 N.W. 855. Workmen's compensation indemnifies the employer and not the employee. 71 C.J. pp. 912, 915. Such a policy does not affect the rights of the insured employee but only the rights of the employer. 71 C.J. p. 907. The Wisconsin Supreme Court has definitely held that the provisions in the Wisconsin Workmen's Compensation Act giving the employer or his insurer rights in the recovery from a third person have no extra-territorial effect and they do not apply to actions brought by the personal representatives of the employee under the wrongful death statutes of another state. Bernard v. Jennings, 1932, 209 Wis. 116, 244 N.W. 589; Anderson v. Miller Scrap Iron Co., 1921, 176 Wis. 521, 182 N.W. 852, affirmed, 1922, 187 N.W. 746. The Iowa Supreme Court refused to give effect in Iowa to an analogous provision in the Illinois Workmen's Compensation Act. Smith-Hurd Rev.St.Ill. c. 48, §§ 138–172. Henriksen v. Crandic Stages, 1933, 216 Iowa 643, 246 N.W. 913. See, also, Standard Oil Co. v. Lyons, 8 Cir., 1942, 130 F.2d 965. Sec. 85.22, Code of Iowa 1946 which is a part of the Iowa Workmen's Compensation Act, gives the employer certain rights in and to recovery made by an employee against a third party. However, that section is limited by its terms to compensation paid under the Iowa Act.

So far as the record in the present case shows, the workmen's compensation insurance carrier is not a party in interest and the plaintiff, as administratrix, is the sole party in interest so far as recovery for wrongful death is concerned.

The decedent carried a policy of collision insurance, with the Travelers' Insurance Company, on the motor vehicle owned by him which was involved in the collision. It was stipulated that the collision insur-

ance carrier had paid the plaintiff the sum of $1,205.95 for damages to the motor vehicle and that such carrier had received the sum of $685 as salvage for the car. The plaintiff seeks herein to recover the difference between those two sums, or the sum of $520.95. It should be noted that the plaintiff has been paid in full for the damages to the motor vehicle, and that the sum of $520.95 claimed is the amount of the loss sustained by the collision insurance carrier. The United States claims that as to this item the plaintiff is not the real party in interest but that as to that item the collision insurance carrier is the sole and only party in interest. The insurance policy was not in evidence and nothing appears as to its terms and provisions. The collision insurance carrier is not a party to the action and has not asked to intervene herein or otherwise asserted in this action any claim to the recovery herein.

 Where an insurance contract is regarded as one of indemnity, the insurer becomes subrogated to rights of the insured to the extent of the loss paid by it. 46 C. J.S., Insurance, § 1209. An automobile collision insurance policy is a contract of indemnity and the insurer becomes, by operation of law, subrogated to the rights of the insured to the extent of the loss paid. Rursch v. Gee, 1946, 237 Iowa 1391, 25 N. W.2d 312, 315. Thus, it seems clear that the collision insurance carrier in the present case, by operation of law, became subrogated to all of the damages sustained by the plaintiff as to the motor vehicle and that the recovery for such item will inure to its sole benefit. While the claim of the United States is that the collision insurance carrier is the only party that can recover for the damage to the motor vehicle, yet, it seems clear from other cases arising under the Federal Tort Claims Act that if the collision insurance carrier had joined in this action for the recovery of that item, it would have been met by the challenge on the part of the United States that the Federal Tort Claims Act does not authorize recovery upon derivative claims. That matter and related matters are considered in a number of law review articles and in a number of reported cases. Recovery

From The United States Under the Federal Tort Claims Act by Leslie L. Anderson, 31 Minnesota Law Review 456; The First Year Under The Federal Tort Claims Act by George F. Foley and M. M. Heuser, 9 Federal Bar Journal 23; Wojicuk v. United States, D.C.Wis., 1947, 74 F.Supp. 914; Rusconi v. United States, D.C.Cal., 1947, 74 F.Supp. 669; Old Colony Ins. Co. v. United States, D.C.Ohio, 1947, 74 F.Supp. 723; Hill v. United States, D.C. Tex., 1947, 74 F.Supp. 129; Commissioners of the State Ins. Fund v. United States, D.C.Wis., 1947, 75 F.Supp. 272. That matter has also been considered in a number of district court cases not as yet reported in the Federal Supplement.

Rule 17(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, provides as follows: "Every action shall be prosecuted in the name of the real party in interest; but an executor, administrator, guardian, trustee of an express trust, a party with whom or in whose name a contract has been made for the benefit of another, or a party authorized by statute may sue in his own name without joining with him the party for whose benefit the action is brought; and when a statute of the United States so provides, an action for the use or benefit of another shall be brought in the name of the United States."

 It is the contention of the United States that regardless of whether a subrogee may or may not sue under the Federal Tort Claims Act that under Rule 17(a) a person may not maintain a suit for the use of another where the "use" plaintiff is sui juris. Connected with the question of "real party in interest" is the question of who might or might not maintain an action on a claim where subrogation is present. If a party is only subrogated to an item of damage which is only a part of an entire claim or cause of action, then the maintenance of an action by such subrogee for such part would constitute a splitting of the claim or cause of action which is not permitted. Travelers' Insurance Co. v. Great Lakes Engineering Works Co., 6 Cir., 1911, 184 F. 426. There are several questions presented in connection with this phase in the present case.

One question is whether the plaintiff had one claim or cause of action for the property damage and another claim or cause of action for the personal injuries received by the decedent which resulted in his death or whether the plaintiff had but one claim or cause of action with different items of damage. There is also presented the question as to what the law was in regard to a partial or entire subrogee maintaining an action prior to the adoption of Rule 17(a) and what changes, if any, were made in the law by the adoption of Rule 17(a).

Under the common law practice where the insurer had become subrogated to the entire cause of action, the rule was that in actions at law the suit could be maintained by the insured in his name for the use of the insurer while in equity the suit could be maintained in the name of the insurer. Aetna Life Insurance Company v. Moses, 1938, 287 U.S. 530, 53 S.Ct. 231, 77 L.Ed. 477, 88 A.L.R. 647. However, under the common law rule where there was only partial subrogation, the right of action to the entire loss remained in the insured. Aetna Life Insurance Company v. Moses, supra. See, also, Firemen's Insurance Co. v. Bremner, 8 Cir., 1928, 25 F.2d 75, 76. As to the different phases of the questions relating to actions where subrogation is involved, see annotation to Phillips v. Clifton Mfg. Co., 1944, 204 S.C. 496, 30 S.E.2d 146, 157 A.L.R. 1255; Aetna Life Insurance Company v. Moses, supra; and Vasu v. Kohlers, 1945, 145 Ohio St. 321, 61 N.E.2d 707, 166 A.L.R. 855. Prior to 1933, the Supreme Court of the District of Columbia had adopted the court rule that actions at law "shall be prosecuted in the name of the real party in interest." In the case of Aetna Life Insurance Company v. Moses, supra, the United States Supreme Court raised the question as to whether that District of Columbia court rule had changed the common rule that in actions at law where the subrogation was entire the action should nevertheless be maintained in the name of the insured. In that case, there was only partial subrogation. Therefore, the United States Supreme Court did not have to determine the question. However, whatever effect Rule 17(a), which is similar to the District of Columbia court rule referred to, might have in cases where there was entire subrogation, there is nothing to indicate that Rule 17(a) changed the existing rule of law that in cases of partial subrogation the action could be maintained by the insured in his own name for the entire loss. The rule in Iowa has been and is that a motor vehicle collision insurance carrier is not a necessary party in an action brought by the insured for damages to the insured motor vehicle. Rursch v. Gee, 1946, 237 Iowa 1391, 25 N.W.2d 312; Caligiuri v. Des Moines Ry., 1939, 227 Iowa 466, 288 N.W. 702. It has long been the rule in Iowa that actions must be prosecuted in the name of the real party in interest. Section 10967, Code of Iowa 1939; Rule 2, Iowa Rules of Civil Procedure, Code of Iowa 1946, Vol. II, p. 1817.

It is the holding of the court that in cases where there is only partial subrogation the insured may maintain an action under the Federal Tort Claims Act for the entire claim as the real party in interest under Rule 17(a).

In the present case, if the damages to the motor vehicle constitute a separate claim or cause of action, then the plaintiff has no interest in that item and the collision insurance carrier is the only party in interest as to that item. If, however, the item as to the motor vehicle is only a part of an entire claim or cause of action, then the status of the collision insurance carrier is that of a partial subrogee. In the present case, the status of the collision insurance carrier as a partial or entire subrogee depends upon whether the collision which caused both personal injuries and property damage gave rise to one claim or cause of action or two claims or causes of action; i.e., one for the personal injuries and one for the property damage. That question has been a matter of frequent judicial consideration. The authorities on that question are collected in the annotations to the following cases: Vasu v. Kohlers, Inc., 1945, Ohio Supreme Court, 145 Ohio St. 321, 61 N.E.2d 707, 166 A.L.R. 855; Hayward v. State Farm Mut. Auto

Ins. Co., 1942, 212 Minn. 500, 4 N.W.2d 316, 140 A.L.R. 1236; Dearden v. Hey, 1939, 304 Mass. 659, 24 N.E.2d 644, 127 A.L.R. 1077; Winters v. Bisaillon, 1936, 153 Ore. 509, 57 P.2d 1095, 104 A.L.R. 968; Underwood v. Dooley, 1929, 197 N.C. 100, 147 S.E. 686, 64 A.L.R. 656. The majority rule as shown by those annotations is that a tort which causes both personal injuries and property damage gives rise to but one claim or cause of action. No Iowa cases are cited in the annotations and apparently the Iowa Supreme Court has not directly passed upon the question. The federal cases listed in the annotations have only to do with the rule in a particular state and apparently there is no established federal court rule as to the matter. The minority rule is the old English rule and had its origin during the time when the highly specialized and highly technical common law system of pleading was in use. Under that system, every particular claim had to fit into a certain mold. Both in the Iowa court practice and in the federal court practice, there has been a definite trend away from the "piecemeal" presentation and determination of litigation. Woodbury v. Porter, 8 Cir., 1946, 158 F.2d 194; United States v. Sinclair Refining Co., 10 Cir., 1942, 126 F.2d 827; 4 Cyclopedia of Federal Procedure (2d Ed.) p. 488. See new Iowa Rules of Civil Procedure. Chapter 278, Laws of 50th General Assembly. In view of that trend, it is believed that it can justifiably be assumed that the Iowa Supreme Court and the federal appellate courts would follow the majority rule. It is, therefore, held that the claim of the plaintiff for property damage and wrongful death constitutes but one claim or cause of action; and, that the collision insurance carrier was and is only a partial subrogee; and, that the plaintiff can maintain this action as the real party in interest.

The collision in the present case took place around 11:00 o'clock a. m., on May 23, 1946, about one and one-half miles south of the City of New Hampton, Chickasaw County, Iowa. At this point, a highway numbered both as Iowa Primary Road No. 63 and United States Highway No. 18 runs north and south. At other places in the county, Highway No. 63 and United States Highway No. 18 are separate highways, one running in a general north and south direction and one in a general east and west direction, but in the particular area they are joined into one. For convenience, this highway will be referred to as Primary Road or Highway No. 63. At the point in question, Highway No. 63 makes a right angle intersection with a graveled or dirt secondary highway running east and west. For convenience, that highway will be hereafter referred to as the secondary road. Highway No. 63 was paved with pavement 18 feet in width which was marked by a line in the center. There were dirt shoulders about six feet wide on each side of the pavement, and ditches about four feet deep beyond the shoulders. The traveled portion of the secondary road was from 20 to 22 feet and was fairly level with the surrounding area. The pavement on Highway No. 63 was laid on a grade somewhat above the surrounding area. When a motor vehicle enters upon Highway No. 63 from the secondary road, it must travel up an incline to proceed on to the pavement. Highway No. 63 runs in a straight line from a point 1,200 feet south of the center of the intersection in question to a point 200 feet north of the center of the intersection. Starting at a point 1,200 feet south of the center of the intersection up to a point 200 feet north of the intersection, Highway No. 63 descends uniformly at the rate of .6 foot per hundred feet. It then ascends slightly and then descends rather sharply. The descent is such that one in a motor vehicle at the bottom of the descent could not see motor vehicles at the intersection to the south.

In Iowa there is the primary road system and the secondary road system. Sec. 312.2, Code of Iowa 1946. All highways not in the primary road system are in the secondary road system. Sec. 309.2, Code of Iowa 1946. The State Highway Commission has supervision and charge of the primary road system. Primary roads are designated as through highways. Section 321.350, Code of Iowa 1946. The State Highway Commission is authorized to erect stop signs at points where other highways intersect with through highways, and it is the duty of operators of motor vehicles to stop at

such signs before entering the intersection. Sec. 321.345, Code of Iowa 1946. In the present case, the State Highway Commission had erected stop signs at the side of the secondary road at the right of way line of Primary Highway No. 63. The stop sign at the west right of way line was 24 feet from the edge of the pavement. At a point 1,100 feet south of the intersection in question, there was a group of farm buildings on either side of the Primary Highway No. 63. Between that point and the intersection in question, there were no obstructions to the vision. A person seated in an automobile at the stop sign on the secondary road had a full view of an automobile approaching from the south for a distance of 1,050 feet and a partial view for a distance somewhat greater than this. On the morning of the collision, it had been alternately raining and misting but not to such an extent as greatly to affect visibility or highway conditions. On the morning in question, Nicholas Klein, a rural mail carrier in the employ of the United States, was delivering mail along his customary mail route. He was driving a motor vehicle owned by him which had originally been made for an army reconnaisance car. The vehicle was of Dodge make and weighed 4,600 pounds. There is nothing to indicate other than that it was in proper running condition. The maximum speed of the vehicle in regular low gear was 18 miles per hour. There were canvas side curtains on the vehicle which were drawn down at the time. Vision through the side curtains was provided by three celluloid windows around ten inches square. Nicholas Klein was at the time 63 years of age. He was wearing what are commonly termed reading glasses to enable him to read the addresses on the mail. At the morning in question, Nicholas Klein was driving east on the secondary road towards its intersection with Highway No. 63. This secondary road was the customary mail route of Nicholas Klein and he had approached and crossed this intersection many times. At the same time, the decedent, Edward C. Van Wie, was driving north on Highway No. 63 towards the same intersection. The decedent Van Wie was 63 years of age and a traveling salesman by occupation. He

was driving a 1946 Deluxe Model Plymouth Sedan. The weight of this vehicle was 3,100 pounds. It was in excellent running condition. The witness Klein testified that he stopped at the stop sign and that he then looked to the south and saw the Van Wie car about 900 feet south of the intersection approaching at a speed of 45 to 50 miles an hour; that he then started his car up the incline and through and across the intersection. He further testified that he proceeded forward in regular low gear and that his speed was from five to six miles an hour as he drew up the incline and on to the paved portion of Highway No. 63. He further testified that it was his intention to proceed across Highway No. 63 and continue east on the secondary road beyond. The Klein car collided with the Van Wie car, the collision taking place on the right or east half of the pavement on Highway No. 63. The right front side of the Klein car struck the Van Wie car at the back end of the left front fender. The impact of the two cars rolled the Van Wie car over sideways in a clockwise direction off the road, and end over end northward until it came to rest in the ditch east and north of a culvert about 50 feet north of the center of the intersection. The witness Klein testified that he took only one look to the south and that was when he was stopped at the stop sign; and that he made no observations to the south between the time he started up from the stop sign and the time of the collision; and that he did not see the Van Wie car from the time he made the observation at the stop sign until it collided with his car. He further testified that at no time from the time he left the stop sign did he apply his brakes. Apart from Klein, only two other witnesses testified as to the operation of the vehicles involved at or preceding the collision. One Daniel Schnurr was driving a truck south on Highway No. 63 some distance north of the intersection. His view of the movement of the two vehicles was cut off for a time while he was traveling through the descent in the highway north of the intersection. During part of the time, Schnurr was looking at a Nicolaus Haygens who was operating a tractor in an adjoining field. The extent of Schnurr's testimony

is that he saw the Klein car stop at the stop sign but he did not see the car start up again and that he saw the Van Wie car for a while some distance south of the intersection but not in the near proximity to the intersection. He was unable to tell whether it was going fast or slow. Nicolaus Haygens was standing upon and operating a tractor in a field adjoining the intersection to the north. The tractor was being operated next to the fence and during the period of his observations, he was from 150 to 200 feet north and west of the intersection. The witness Haygens testified that he saw the Klein car approach the stop sign and stop; that at the time the Klein car stopped, he saw the Van Wie car approaching from the south. He further testified that at the time the Klein car stopped the Van Wie car was about 900 feet south of the intersection and going around 45 to 50 miles an hour; and that as the Van Wie car got to within 100 to 200 feet of the intersection, the Klein car started up quite rapidly from the stop sign and proceeded, without stopping, across Highway No. 63 and hit the Van Wie car on the east or right hand half of the paving. The witness Haygens further testified that, after the collision, he ran over to where the cars were lying and that as Klein got out of his car he said, "I must have not seen—I didn't look a second time." The witness Haygens further testified that, at or shortly after Klein had stopped at the stop sign, a car coming from the north passed through the intersection and went on south.

By assuming that estimates of speed and distances made by certain witnesses are absolute and precise certainties and by not giving that certainty to other similar estimates by the same or other witnesses, parties to an automobile collision can reach diametrically opposite conclusions as to negligence and contributory negligence. In the case of Short v. Powell, 1940, 228 Iowa 333, 291 N.W. 406, the Iowa Supreme Court states at (page 407 of 291 N.W.): "It is to be remembered that when speeds and distances are spoken of, we are dealing with estimates and not with certainties. For that reason we think it is to no purpose to make computation (as the par-

ties do in argument) to prove as established fact that either or both of the drivers should have done or omitted doing certain things in the exercise of reasonable care." In the case of Remer v. Takin Bros. Freight Lines, 1940, 227 Iowa 903, 289 N.W. 477, the Iowa Supreme Court stated in a case involving a motor vehicle collision at page 479 of 289 N.W.: "Unfortunately, accidents of this kind happen so quickly and unexpectedly that the witnesses, being wholly unprepared for the eventualities, do not grasp all of the details at the time, and, when called upon to testify concerning them approximately a year later as in this case, do not give a strictly accurate account of the events that took place. Their estimates vary as to distances, speed of the vehicles, etc. This is due to the frailties of human nature. It does not mean that any witness desires to misrepresent or falsify."

In the present case, the parties, by assuming that certain of the estimates of certain witnesses constitute absolute certainties and that other estimates by the same or other witnesses are only uncertain estimates, have made computations which result in diametrically opposite conclusions as to what the decedent Van Wie did or did not do. Such computations are subject to the infirmity pointed out in Short v. Powell, supra. In the present case, by taking certain portions of the evidence as to speeds and distances, it could be persuasively claimed that the collision could not have happened at all. Unfortunately, it did happen.

The mere fact that a collision occurred and that the decedent sustained injuries is not in itself sufficient to show that Klein was negligent; the burden is upon the plaintiff to establish by the greater weight or preponderance of the evidence that Klein was negligent. Noland v. Kyar, 1940, 228 Iowa 1006, 292 N.W. 810, 812, 813. In Chapter 321, Code of Iowa 1946, are found the statutory provisions relating to the operation of motor vehicles upon the public highways. With some exceptions, that Chapter follows the Uniform Act Regulating Traffic on Highways. Mowrey v. Schulz, 1941, 230 Iowa 102, 296 N.W. 822. In Iowa all violations of those statutory

provisions found in Chapter 321, except as to one provision not here material, constitute negligence. Kisling v. Thierman, 1932, 214 Iowa 911, 243 N.W. 552. Those statutes prescribe only the minimum of prudent conduct and all motorists using the highways are required at all times to exercise the care of an ordinary prudent person under the same circumstances. Langner v. Caviness, Iowa, 1947, 28 N.W.2d 421, 424, 172 A.L.R. 1135; Knaus Truck Lines v. Commercial Freight Lines, Iowa, 1947, 29 N.W.2d 204; Richards v. Begenstos, 1946, 237 Iowa 398, 21 N.W.2d 23, 28. A violation of a statutory provision relating to the operation of motor vehicles is negligence as a matter of law. Kisling v. Thierman, supra. In such cases, the legislature has declared what is negligence and that question is not a matter for determination by the trier of the facts. Where no statutory provision is involved, then the question as to whether what a party did do or omitted to do amounts to negligence is open to and is to be determined by the trier of the facts. In either case, the question of whether the negligence was the proximate cause of the injuries complained of is to be determined by the trier of the facts. One of the propositions that a party seeking to recover must establish, by the greater weight or preponderance of the evidence, is that the negligence complained of was the proximate cause of the injuries sustained. Burwell v. Siddens, Iowa, 1947, 25 N.W.2d 864; Crutchley v. Bruce, 1932, 214 Iowa 731, 240 N.W. 238. Under the Iowa law, in negligence cases by proximate cause is meant the direct and natural cause, unbroken by any other cause, without which the mishap would not have happened. Buchanan v. Hurd Creamery Co., 1932, 215 Iowa 415, 246 N.W. 41. See, also, Samuelson v. Sherrill, 1938, 225 Iowa 421, 280 N.W. 596, 598, and Kemp v. Creston Transfer Co., D.C.Iowa 1947, 70 F.Supp. 521, 525. Under the Iowa law, contributory negligence means such negligence as contributes in any way or any degree directly to the injuries complained of. Hoegh v. See, 1933, 215 Iowa 733, 246 N.W. 787. See, also, Kemp v. Creston Transfer Co., D.C.Iowa 1947, 70 F.Supp. 521, 527, 528.

In the present case, if Klein, at the time and place in question, violated any of the statutes relating to the operation of motor vehicles, he would be guilty of negligence. He would also be guilty of negligence, even though he did not violate any of those statutes, if he did something which an ordinary prudent person would not have done under the same or similar circumstances or if he omitted to do something that such a person would have done under the same or similar circumstances. Schalk v. Smith, 1938, 224 Iowa 904, 909, 277 N.W. 303, 305. The same rules would be applicable to the decedent in connection with the matter of contributory negligence. Both Klein and the decedent had the right to assume that others using the highways would obey the law until in the exercise of reasonable caution they should have known otherwise. Jakeway v. Allen, 1938, 226 Iowa 13, 282 N.W. 374, 377. Davidson v. Vast, 1943, 233 Iowa, 534, 541, 10 N.W.2d 12, 16.

While there is no specific statutory provision that requires an operator of a motor vehicle to keep a lookout, it is the well-settled Iowa law that it is the legal duty of an operator of a motor vehicle to keep a proper lookout for others using the highway. Lorimer v. Hutchinson Ice Cream Co., 1933, 216 Iowa 384, 249 N.W. 220; Gearhart v. Des Moines R. Co., 1946, 237 Iowa 213, 21 N.W.2d 569. By a proper lookout on the part of the operator of a motor vehicle is meant more than merely to look straight ahead and more than merely to see an object; it implies such operator's being watchful of the movements of his own vehicle in connection with the thing seen, and involves the care, prudence, and watchfullness of an ordinary prudent person under the same or similar circumstances. Pazen v. Des Moines Transportation Co., 1937, 223 Iowa 23, 272 N.W. 126, 130; Rebmann v. Heesch, 1939, 227 Iowa 566, 288 N.W. 695, 701. Where the operators of two motor vehicles approach an intersection and the operator of one vehicle could see the other motor vehicle for a distance of 130 feet away and could have stopped his car within 70 feet, the matter of negligence in failing to keep a proper lookout is directly in-

volved. Lathrop v. Knight, 1941, 230 Iowa 272, 297 N.W. 291. An operator of a motor vehicle at a stop sign entrance to a through highway is required to make observation for traffic on the through highway at the stop sign and is further required to continue his observation as he leaves the stop sign and approaches the traveled portion of the through highway. Hittle v. Jones, 1933, 217 Iowa 598, 250 N.W. 689.

■ A number of Iowa statutory provisions contained in Chapter 321, relating to the operation of motor vehicles, are involved. Sec. 321.230, Code of Iowa 1946, provides in part as follows: "The provisions of this chapter applicable to the drivers of vehicles upon the highways shall apply to drivers of all vehicles owned or operated by the United States * * *." The Iowa statute commonly referred to as the Iowa speed statute is section 321.285, Code of Iowa 1946. The pertinent portions of that statute provide as follows: "Any person driving a motor vehicle on a highway shall drive the same at a careful and prudent speed not greater than nor less than is reasonable and proper, having due regard to the traffic, surface and width of the highway and of any other conditions then existing, and no person shall drive any vehicle upon a highway at a speed greater than will permit him to bring it to a stop within the assured clear distance ahead, such driver having the right to assume, however, that all persons using said highway will observe the law."

The portion of the statute just set forth specifies two duties: (1) to drive at a prudent and reasonable rate of speed under the conditions, and; (2) ability to stop within the assured clear distance ahead. Swan v. Dailey-Luce Auto Co., 1936, 221 Iowa 842, 849, 265 N.W. 143; Wells v. Wildin, 1938, 224 Iowa 913, 277 N.W. 308, 313, 115 A.L.R. 169. The second duty referred to is known as the "assured clear distance" rule. In general, it is not regarded as applicable where motor vehicles are approaching each other at intersections. Wells v. Wildin, 1938, 224 Iowa 913, 277 N.W. 308, 115 A.L.R. 169. The plaintiff does not charge Klein with negligence as to speed, but the United States claims that the decedent Van Wie was guilty of contributory negligence in the matter of speed.

Section 321.1, Subparagraph 54, Code of Iowa 1946, provides in part as follows: "'Intersection' means the area embraced within the prolongation * * * of the * * * lateral boundary lines of the roadways of two highways which join one another at, or approximately at, right angles * * *."

Section 321.313, Code of Iowa 1946, provides: "No person shall start a vehicle which is stopped, standing, or parked unless and until such movement can be made with reasonable safety."

Section 321.1, Subparagraph 53 provides in part as follows: "'Through (or thru) highway' means every highway or portion thereof at the entrances to which vehicular traffic from intersecting highways is required by law to stop before entering or crossing the same and when stop signs are erected as provided in this chapter * * *."

Section 321.321, Code of Iowa 1946, provides as follows: "The driver of a vehicle shall stop as required by this chapter at the entrance to a through highway and shall yield the right of way to other vehicles which have entered the intersection from said through highway or which are approaching so closely on said through highway as to constitute a hazard, but said driver having so yielded may proceed cautiously and with due care enter said through highway."

Section 321.1, Subsection 66, Code of Iowa 1946, provides: "'Right of way' means the privilege of the immediate use of the highway."

■ It is the duty of the operator of a motor vehicle coming to a stop sign at the entrance to a through highway to ascertain that the way is clear before entering that highway and if he fails to do so, he cannot by such wrongful act acquire the right of way over other vehicles entitled thereto. Mowrey v. Schulz, 1941, 230 Iowa 102, 106, 296 N.W. 822.

The plaintiff claims that Klein was guilty of negligence both under Section 321.-

313 and Section 321.321. It is believed that Section 321.313 is not applicable in the present case. However, it seems clear that Section 321.321 pertaining to the duty of a motor vehicle entering a highway is involved in the present case.

Section 321.288, Code of Iowa 1946, provides in part as follows: "The person operating a motor vehicle * * * shall have the same under control and shall reduce the speed to a reasonable and proper rate: * * *

3. When approaching and traversing a crossing, or intersection of public highways, or a bridge, or a sharp turn, or a curve, or a steep descent, in a public highway."

The plaintiff makes no claim of negligence against Klein under this statute, but the United States claims that the decedent Van Wie was guilty of contributory negligence thereunder. This statute imposes two duties, one as to control and one as to speed. Arends v. De Bruyn, 1936, 217 Iowa 529, 533, 252 N.W. 249. If the operator of a motor vehicle is already traveling at a reasonable and proper rate of speed, he is not required to reduce his speed further on approaching an intersection. Carlson v. Meusberger, 1925, 200 Iowa 65, 76, 204 N.W. 432, 437. See, also, Jarvis v. Stone, 1933, 216 Iowa 27, 33, 247 N.W. 393; Smith v. Pine Co., 1943, 234 Iowa 256, 264, 12 N.W.2d 236, 241; Sanford v. Nesbit, 1943, 234 Iowa 14, 20, 11 N.W.2d 695, 699; Coon v. Rieke, 1942, 232 Iowa 859, 862, 6 N.W.2d 309; Carpenter v. Wolfe, 1937, 223 Iowa 417, 421, 273 N.W. 169, 172, and Schwickerath v. Maas, 1941, 230 Iowa 329, 332, 297 N.W. 248, 249. An operator of a motor vehicle has his car under control when he has the ability to guide and direct its course of movement, fix the speed, and can, if the occasion demands, bring it to a stop with a reasonable degree of celerity. Duncan v. Rhomberg, 1931, 212 Iowa 389, 400, 236 N.W. 638.

Section 321.432, Code of Iowa 1946 provides in part as follows: "The driver of a motor vehicle shall when reasonably necessary to insure safe operation give audible warning with his horn but shall not otherwise use such horn when upon a highway."

The plaintiff claims negligence on the part of Klein under this statute and the United States claims contributory negligence of the decedent Van Wie thereunder. This statutory provision is no more than the enactment of a common law rule. Lawson v. Fordyce, 1945, 237 Iowa 28, 21 N.W. 2d 69. The test is not the personal belief of the operator of a motor vehicle, but what an ordinary, careful and prudent person would have done under the same circumstances. Lawson v. Fordyce, supra. The failure of an operator to sound his horn on approaching an intersection is not negligence as a matter of law as the statute does not require the sounding of a horn under any and all conditions. Short v. Powell, 1940, 228 Iowa 333, 291 N.W. 406, 408. It is for the trier of the facts to determine as a matter of fact whether or not an ordinary prudent person under the same conditions would have sounded his horn. Short v. Powell, supra. When, at the time, there is no apparent danger of a collision, then the failure to sound the horn is not a proximate cause of such collision. Jakeway v. Allen, 1940, 227 Iowa 1182, 290 N.W. 507, 510. In the present case, Klein does not claim to have sounded his horn. Klein did not testify directly as to whether he did or did not hear any horn sounded by the decedent Van Wie. The witness Haygens testified that the tractor he was operating made so much noise that he could not state whether or not the decedent Van Wie did sound his horn.

It appears from the evidence to which the parties agreed by stipulation might be considered by the court that a motor vehicle going 6 to 8 miles an hour can be stopped within a distance of from 6 to 8 feet; that a motor vehicle going 40 miles an hour can be stopped within a distance of from 115 to 128 feet; that a motor vehicle going 50 miles an hour can be stopped within a distance of 166 to 186 feet. The above figures assume that the brakes on the motor vehicle were in good condition and were applied on a dry pavement. The figures include the so-called "thinking time" and "braking time." In the present case, the

distance from the stop sign to the edge of the pavement was 24 feet. The pavement was 18 feet in width. The collision took place on the right or east half of the pavement. Therefore, the Klein car traveled around 33 feet in proceeding from the stop sign to the point of the collision. A motor vehicle traveling at the rate of 5 miles per hour travels 7⅓ feet per second; at the rate of 6 miles per hour, 8⅘ feet per second; at the rate of 7 miles per hour, 10⅖ feet per second; at the rate of 8 miles an hour, 11¹¹⁄₁₅ feet per second. At the rate of 40 miles per hour, a motor vehicle travels at the rate of 58⅔ feet per second; at the rate of 45 miles per hour, 66 feet per second, and at 50 miles per hour, 73⅓ feet per second.

■■■ This Court is of the view that what occurred is as next set forth. Klein stopped his motor vehicle at the stop sign. A car from the north passed through the intersection and proceeded on south on the highway. Klein looked once to the south and saw the Van Wie car approaching. When the Van Wie car had reached a point fairly near the intersection, Klein suddenly put his car in motion, proceeded directly up the incline on the paving, and, without stopping, crossed the intersection to the point of the collision. At no time from the moment of starting to the moment of impact did Klein make any observation as to the Van Wie car. Had he made observation during that time, he would have observed that the Van Wie car was so close to the intersection as to constitute a hazard. The violations by Klein of the duties owed by him to Van Wie were occasioned by an error or errors in judgment on his part. However, negligence occasioned by an error in judgment is none the less negligence. Sutzin v. C. M. St. P. Ry. Co., 1895, 95 Iowa 304, 63 N.W. 709. Klein did not, at, before, or after starting up, sound his horn. The Court is of the view that the plaintiff has established by the greater weight or preponderance of the evidence that under the tests and standards of the Iowa law Klein was guilty of negligence in the following particulars:

(1) In failing to keep a proper lookout for the Van Wie Car.

(2) In entering a through highway at a time when a motor vehicle was approaching on such highway so closely as to constitute a hazard. The Court is of the view that the plaintiff has established by the greater weight or preponderance of the evidence that such negligence was the proximate cause of the collision.

While in some cases the failure of the operator of a motor vehicle to sound his horn might be of determinative importance, in the present what brought about the collision was the negligence of Klein in the particulars hereinbefore set forth and not his failure to sound his horn.

■ There is next presented the question of contributory negligence on the part of the decedent Van Wie. Under the Iowa rule in a tort action, the burden is upon the plaintiff to plead and establish his freedom from contributory negligence or he cannot recover. Walker v. Roosevelt Hotel Co., 1932, 214 Iowa 1150, 241 N.W. 484; Bryson v. C. B. & Q. Ry. Co., 1894, 89 Iowa 677, 57 N. W. 430; Scherer v. Scandrett, 1944, 235 Iowa 229, 16 N.W.2d 329, 331; Anderson v. Holsteen, Iowa, 1947, 26 N.W.2d 855; Richards v. Begenstos, 1946, 237 Iowa 398, 21 N.W.2d 23, 28. The Federal Tort Claims Act, 28 U.S.C.A. § 932, hereinbefore set forth provides that the practice and procedure in actions thereunder shall be in accordance with the Federal Rules of Civil Procedure. 28 U.S.C.A. following section 723c. Under Rule 8(c) of those Rules, contributory negligence is an affirmative defense.

■ Under the Federal Tort Claims Act, questions of substantive law are to be determined by the state law, while questions of practice and procedure are to be determined by the Federal Rules of Civil Procedure. Thus, in Federal Tort Claims cases, the situation is analogous to that in cases where federal court jurisdiction is based upon diversity of citizenship. The matter of the conflict between the Iowa rule as to contributory negligence and Rule 8(c) in cases where federal court jurisdiction was based upon diversity of citizenship came before the Eighth Circuit Court of Appeals in the case of Ft. Dodge Hotel Co. v. Bartelt,

8 Cir., 1941, 119 F.2d 253. That Court held that the Iowa rule as to contributory negligence was a matter of substantive law and governed the situation. It is the holding of this Court that, in cases brought under the Federal Tort Claims Act where the tort complained of was committed in Iowa, the burden is upon the plaintiff to establish freedom from contributory negligence, and that the provision of Rule 8(c) providing that contributory negligence is an affirmative defense is not applicable. The plaintiff in the present case pleaded freedom from contributory negligence. The question is as to whether she has established that proposition by the greater weight or preponderance of the evidence.

Under the Iowa law, contributory negligence means such negligence as contributes in any way, or in any degree directly to the injuries of which complaint is made. In the cases of Hoegh v. See, 1933, 215 Iowa 733, 246 N.W. 787, and Yance v. Hoskins, 1938, 225 Iowa 1108, 281 N.W. 489, 494, 118 A.L.R. 1186, the Iowa Supreme Court set forth the instruction which it termed to be a model instruction on contributory negligence. That instruction clearly states the Iowa rule as to contributory negligence. In substance, that instruction is as follows: "It is a rule of law that one who is injured through the fault or negligence of another cannot recover for the damages occasioned thereby, if he, by any want of ordinary care on his part, contributed in any way or in any degree directly to the injuries of which he complains. * * *, before the plaintiff can recover, he must show that he did not, by any negligence or want of ordinary care on his part, in any way or in any degree, contribute directly to the injuries of which he complains."

Under the Iowa law, direct affirmative proof of particular acts constituting due care in connection with the matter of contributory negligence are not required. Gregg v. Town of Springville, 1919, 188 Iowa 239, 174 N.W. 23. Freedom from contributory negligence may be shown by circumstantial evidence. Beach v. City of Des Moines, Iowa, 1946, 24 N.W.2d 342.

The fact that the operator of a motor vehicle charged with contributory negligence had but a moment in which to protect himself must be given consideration in determining that issue. Newland v. McClelland & Son, 1933, 217 Iowa 568, 575, 250 N.W. 229, 232.

On the issue of contributory negligence, the plaintiff under certain conditions is entitled to the benefit of the so-called no eye-witness rule. That rule is analyzed as follows in the case of Golinvaux v. Burlington, C. R. & N. R. Co., 1904, 125 Iowa 652, 101 N.W. 465, at page 467: "The doctrine seems to be bottomed on the thought that, when there is or can be no evidence regarding one's conduct in a place of danger, the instinct of self-preservation implanted in every human breast will raise an inference that he was not guilty of any negligence which contributed to or brought about the injury. But where there is direct evidence as to his conduct, there is no room for this inference, for the reason that his conduct is to be judged from what he in fact did, rather than from an inference as to what he might have done." On the weight to be given the presumption under the no eye-witness rule, the case of Korah v. C. R. I. & P., 1910, 149 Iowa 711, 128 N.W. 529, 531, 41 L.R.A., N.S., 32 states: "The presumption is something more than a mere shadowy generality. In the absence of direct evidence, the presumption supplies its place, and if the issue of contributory negligence is the only obstacle to recovery, it is sufficient to support a verdict for the plaintiff." More recent cases involving the application of the no eye-witness rule in Iowa are: Graby v. Danner, 1945, 236 Iowa 700, 18 N.W.2d 595; Jensvold v. C. G. W. R. Co., 1944, 234 Iowa 627, 12 N.W.2d 293; Hayes v. Stunkard, 1943, 233 Iowa 582, 10 N.W.2d 19; Davidson v. Vast, 1943, 233 Iowa 534, 10 N.W.2d 12; Prewitt v. Rutherford, Iowa, 1947, 30 N.W.2d 141. See, also, discussion of the rule in Peterson v. Sheridan, 8 Cir., 1940, 115 F.2d 121. The Iowa cases seem to make it clear that in order to be considered an eye-witness to a motor vehicle collision where one of the drivers is killed, the person testifying must at least have had

the motor vehicle operated by the decedent under his observation at all material moments preceding and until the collision. What constitute material moments under the rule varies as to the conditions and circumstances in a particular case. One who observes a motor vehicle for the first time when it is only ten or fifteen feet away from the collision and moving rapidly is not an eye-witness during the material moments. Davidson v. Vast, supra. One whose observations of the movements of the decedent's vehicle is limited to the moment of impact is not an eye-witness under the Iowa rule. Peterson v. Sheridan, 8 Cir., 1940, 115 F.2d 121. One who does not observe a person until such person is immediately in front of a motor vehicle is not an eye-witness as to the actions of that person during the material moments of the accident. Hayes v. Stunkard, supra. At what distance away the movements of a car involved in a motor vehicle collision at an intersection may be said to be material need not now be determined. However, it seems clear that the moments elapsing from the time a motor vehicle comes within a reasonable proximity of such intersection up to the time of collision are material moments and the movements of the motor vehicle during that period are material movements.

In the present case after his first observation, Klein did not look again at the Van Wie car. Neither the witness Schnurr nor the witness Haygens observed its movements from the time it came within reasonable proximity of the intersection to the time it collided with the Klein car. The witness Haygens observed its movements only a part of that period. He was unable to state whether during that period the speed of the Van Wie car was changed. He thought he saw the Van Wie car swerve a little but could not say that it did with certainty. The matters of whether the Van Wie car's speed was reduced or whether it swerved would be material on the question of contributory negligence. Either matter could be indicative of the fact that Van Wie observed the Klein car and was seeking to avoid the collision. Either matter would bear on the question of whether or not Van Wie observed and reacted to his observations as an ordinary prudent and careful person under the same or similar circumstances. It is the view of the Court that the witness Haygens did not constitute an eye-witness under the tests and standards adopted by the Iowa Supreme Court. Therefore, the plaintiff on the issue of contributory negligence is entitled to the inference that Van Wie, in the period reasonably preceding and at the time of the collision, was exercising due care for his own safety. That inference may be negatived by the physical facts. Hittle v. Jones, supra. It also may be weakened or strengthened by circumstantial evidence or other permissible inferences and assumptions. One operating a motor vehicle on a through highway has the right to assume that the operators of other vehicles on intersecting roads will observe the law relating to stop signs. Schwickerath v. Maas, 1941, 230 Iowa 329, 297 N.W. 248; Davidson v. Vast, 1942, 233 Iowa 534, 10 N.W.2d 12; Rogers v. Jefferson, 1937, 224 Iowa 324, 275 N.W. 874, 877. See, also, Arends v. De Bruyn, 1934, 217 Iowa 529, 533, 252 N.W. 249. The right of such operator to that assumption is a very important consideration in the question of whether such operator was free from contributory negligence. Orth v. Gregg, 1933, 217 Iowa 516, 250 N.W. 113, 115.

It is the claim of the United States that the decedent Van Wie was guilty of contributory negligence as to the matter of speed. The testimony of both the witness Haygens and the witness Klein was that at some distance south of the intersection the Van Wie car was traveling at a speed of 45 to 50 miles per hour. No witness was able to state as to whether its speed was decreased. Neither Section 321.285, Code of Iowa 1946, relating to the speed of motor vehicles in general, nor Section 321.288, Code of Iowa 1946, relating to the speed of motor vehicles at intersections, fixes any definite speed limit in miles per hour. What is required under both sections is a reasonable and prudent speed. The propriety of any rate of speed depends largely upon the surrounding facts and circumstances. Kallansrud v. Libbey, 1944, 234 Iowa 700, 13 N.W.2d 684; Jarvis v. Stone, 1933, 216 Iowa 27, 247 N.W. 393, 397; Rogers v. Jef-

ferson, 1939, 226 Iowa 1047, 1051, 285 N. W. 701.

The surrounding facts and circumstances in the present case were that the decedent Van Wie was travelling on a main, through, and paved highway, protected by stop signs which made it the favored thoroughfare at intersections, and the decedent had the right to assume that operators of other vehicles approaching the intersections would observe the law. The decedent was traveling on a straight stretch of highway with no curves or defiles, and with no steep ascents or descents in the immediate proximity. There was no great amount of traffic on the highway at the time, and hence the feature of speed in dense or heavy traffic is not involved. Assuming that Van Wie approached the intersection at the rate of 50 miles per hour, he was not negligent as a matter of law as to speed. Davidson v. Vast, 1943, 233 Iowa 534, 10 N.W.2d 12. This Court is of the view that, under the facts and circumstances in the present case, the decedent Van Wie was not guilty of contributory negligence as a matter of fact as to speed.

It was also the duty of the decedent Van Wie under Section 321.288, Code of Iowa 1946, to have the vehicle operated by him under control when approaching and traversing an intersection. Speed and control are in general more or less bound together and it is difficult to separate the element of speed from the element of control. Davidson v. Vast, 1943, 233 Iowa 534, 10 N.W.2d 12. It is the view of the Court that under the tests and standards adopted by the Iowa Supreme Court Van Wie was not guilty of contributory negligence in the matter of control.

It is the claim of the United States that the decedent Van Wie was guilty of contributory negligence in the matter of lookout.

The duties of observation imposed by law upon one operating a motor vehicle upon a highway at any time are many and varied. An operator of a motor vehicle upon a secondary road approaching a stop sign at the entrance of the secondary road to a through highway seemingly would not have the right to insist that the operator of a motor vehicle approaching and traversing the intersection on the through highway should concentrate his attention and observation solely upon the car approaching the intersection from the secondary road. Therefore, the fact that an operator of a motor vehicle upon a favored highway did not see a particular vehicle enter the highway at a given instant or inappreciable period of time would not in every case constitute contributory negligence on the part of such operator as a matter of law. It seems that even though the operator of a motor vehicle on a through highway is looking directly at a motor vehicle approaching or stopped at a stop sign intersection entrance to such highway, such operator need not anticipate that such vehicle will not stop or that, if stopped, it will be suddenly put in motion and started across the through highway. Rogers v. Jefferson, 1937, 224 Iowa 324, 275 N.W. 874, 877.

The United States, in connection with this claim that Van Wie was guilty of contributory negligence as to lookout, places stress on a statement made by Van Wie to the physician who treated him.

Immediately following the collision, Van Wie was taken to a hospital at New Hampton, Iowa. Dr. Edwin C. O'Connor, a practicing physician of New Hampton, was called to attend him. At the trial, Doctor O'Connor was called as a witness by the defendant and was asked on direct examination as to what statements Van Wie had made to him in relation to the collision and not connected with his treatment of the decedent. The plaintiff was given leave to cross-examine the witness for the purpose of laying a foundation for an objection. After cross-examination, the plaintiff objected to the evidence called for by the question as on the ground that it concerned communications which are privileged under the Iowa law. Objection was also made on other grounds which will be hereafter referred to. The Court reserved ruling and Dr. O'Connor was permitted to testify that while Van Wie was being treated he made the statement that "he did not see the vehicle which struck him." The

question as to the admissibility of this statement was submitted with the case. The United States claims that the statement was admissible and that it establishes that Van Wie was guilty of contributory negligence.

Section 622.10, Code of Iowa 1946 provides in part as follows: "No practicing * * * physician, surgeon, or the stenographer or confidential clerk of any such person, who obtains such information by reason of his employment, * * * shall be allowed, in giving testimony, to disclose any confidential communication properly entrusted to him in his professional capacity, and necessary and proper to enable him to discharge the functions of his office according to the usual course of practice or discipline. Such prohibition shall not apply to cases where the party in whose favor the same is made waives the rights conferred."

The federal courts follow the law of the forum as to communications privileged by state statutes. See cases cited in Munzer v. Swedish American Lines, D.C.N.Y.1940, 35 F.Supp. 493, 496. Rule applied in Aetna Life Ins. Co. v. McAdoo, 8 Cir., 1939, 106 F.2d 618. In the case of Union Pacific R. Co. v. Thomas, 1907, 152 F. 365, 81 C.C.A. 491, the Eighth Circuit Court of Appeals in applying a Nebraska statute almost identical with the Iowa privilege statute stated at page 367 of 152 F. that the essential elements of a communication privileged by the doctor-patient relation are: "(1) The relation of physician and patient; (2) information acquired during this relation; and (3) the necessity and propriety of the information to enable the physician to treat the patient skillfully in his professional capacity."

In the present case, Dr. O'Connor first saw Van Wie in the emergency room at the hospital. He immediately began to administer to him, and the relation of doctor and patient then commenced. The statement in question was made by Van Wie while he was being treated, and according to the doctor's testimony at a time when Van Wie was in a mentally clear condition. The statement was not, however, made in response to any question asked by Dr. O'Con-

nor, and the doctor testified that the information conveyed by the statement was not necessary for purposes of treatment.

In the case of Boyles v. Cora (1942) 232 Iowa 822, 6 N.W.2d 401, 414, the Supreme Court of Iowa noted that there had been considerable criticism of physician-patient privilege statutes in recent years, on the ground that such statutes had but little justification for their existence and that they were often prejudicial to the cause of justice by the suppression of useful truth, "the disclosure of which ordinarily could harm no one." The Iowa Supreme Court stated in that decision that the scope of the privilege had been previously limited by prior decisions in Iowa.

This last statement of the Iowa Supreme Court as to limiting the scope of the privilege is in contrast with an earlier statement of that Court in the case of Pride v. Accident Ass'n, 1927, 207 Iowa 167, 216 N.W. 62, 62 A.L.R. 31. In that case, the Iowa Court held that physicians who treated a patient who later died could not testify as to statements made by the patient in regard to the matter of whether the injuries were caused by suicidal acts. That court stated at page 65 of 216 N.W., "These doctors were concededly attending the insured in a professional capacity. It is argued by appellant, however, that the information thus given by the insured was not 'necessary and proper to enable the doctors to discharge the function of their office.' We have held repeatedly that we will draw no fine lines as to whether a communication is necessary or unnecessary. It is the policy of the statute to provide for great freedom of disclosure by a patient to his physician. The patient is not in a position to know what disclosure may be necessary and what may be unnecessary. He could know the distinction only by inquiry from the physician himself or from other expert advice. All our previous cases take a broad ground upon this subject, and construe the statute liberally to the protection of the confidence reposed by a patient."

It is noticeable that the statement of the rule just set forth makes no reference to the substance of the third requisite specified in

the case of Union Pacific v. Thomas, supra, in regard to the matter of the communication being necessary and proper in order "to enable the physician to treat the patient skillfully in his professional capacity." However, in the case of Pride v. Accident Ass'n, supra, it would seem that statements in regard to suicide would bear upon the professional relation and function of treatment from the standpoint of the mental condition of the patient as well as the proximity from which the gunshot wounds were inflicted upon the patient. Obviously mental illness on the part of a patient is relevant as to what should be done for a patient in caring for or treating him.

■ Statements of an injured person to his physician as to matters connected with the occasion out of which the injuries arose and observations by a physician of the patient and of the facts surrounding the injury would seem to stand or fall as privileged communications on their possible relevancy to treatment or on their relevancy as reasonably believed by either the physician or patient or both of them. Pride v. Accident Ass'n, supra; State v. Masters, 1924, 197 Iowa 1147, 198 N.W. 509, State v. Johnston, 1936, 221 Iowa 933, 267 N.W. 698; Sutcliffe v. I. S. T. M. Ass'n., 1903, 119 Iowa 220, 93 N.W. 90, 97 Am.St.Rep. 298; Raymond v. B. C. R. & N. R. Co., 1884, 65 Iowa 152, 21 N.W. 495. See, also, Note 24, Iowa Law Review 538, 545. Although the Model Code of Evidence of the American Law Institute has not been adopted in Iowa, it is believed that the Iowa rule is in accord with Rule 221 of that Code, the material portions of which read as follows: "* * * a person * * * has the privilege in a civil action * * * to refuse to disclose, and to prevent a witness from disclosing a communication, if he claims the privilege and the judge finds that * * * (b) the patient or the physician reasonably believed the communication to be necessary or helpful to enable the physician to make a diagnosis of the condition of the patient or to prescribe or render treatment therefor * * *"

While it is realized that it is common and natural human behavior for one in recount-ing a series of events which gave rise to an injury of a certain nature to include much data irrelevant to the ascertainment of the correct type of treatment to be administered, and while it is perhaps desirable that much latitude be allowed these statements as privileged communications to encourage disclosure of all facts necessary for treatment, an extension of the privilege to circumstances related by the patient which could have no possible bearing on the treatment of the injury or other professional service is beyond the plain language of the statute and the most liberal constructions of it. It would seem that whether or not Van Wie saw the car which struck him could have no conceivable application to the determination of the proper treatment to be administered to him by Dr. O'Connor. It would seem that such a revelation by Van Wie could not possibly have been considered by either communicant as reasonably necessary to the ascertainment of the injuries sustained and the correct treatment thereof. Nor would it seem that the statement was reasonably incident to any conversation which would bear so directly on the ascertainment of correct treatment as to be included as a part of a whole communication privileged by the statute. The statement was undoubtedly part of the normal reaction of a person in stating or discussing details of an unusual and hazardous incident which had just endangered his life. While the extent of his injuries at the time the statement was made were not fully known, the disclosure in no way could be calculated to bring them to light.

Van Wie's injuries beyond question were caused by the automobile accident here involved. In the case of Missouri Pacific R. Co. v. Castle, 1909, 172 F. 841, 97 C.C.A. 124, the Eighth Circuit Court of Appeals in construing a Nebraska privilege statute almost identical to the Iowa statute, in a case involving a statement of the plaintiff to his doctor as to how his foot came to be run over and crushed by a railway car wheel, in holding such a statement admissible stated at page 845 of 172 F.: "The injury beyond question was caused by one of the defendant's cars passing over plaintiff's leg. Whether the injury was caused by plaintiff's or defendant's negligence was the

pivotal question in the case. It is impossible to imagine anything that Castle, the injured person, could say to the physician in reference to the cause of the injury that would in any way throw any light upon the manner of treating the same. How the leg came to be crushed was for the purpose of treatment absolutely immaterial. What plaintiff told the witness was of no assistance whatever to enable him to discharge the functions of his office."

In the cases in which the Iowa Supreme Court has held privileged certain statements to or observations by a physician regarding the facts of a mishap from which injuries requiring treatment were sustained, those statements or observations have been interpreted as being necessary to ascertain the proper treatment or the rendering of other professional service, or as having in some degree been regarded by the patient or physician as bearing upon such treatment or service. Arnold v. Ft. Dodge R. Co., 1919, 186 Iowa 538, 173 N.W. 252; Battis v. Ry., 1904, 124 Iowa 623, 100 N.W. 543; Burns v. Waterloo, 1919, 187 Iowa 922, 173 N.W. 16; Walmer-Roberts v. Hennessey, 1921, 191 Iowa 86, 181 N.W. 798; Raymond v. Ry., 1884, 65 Iowa 152, 21 N.W. 495; Doran v. Cedar Rapids & M. C. R. Co., 1902, 117 Iowa 442, 90 N.W. 815; Finnegan v. Sioux City, 1900, 112 Iowa 232, 83 N.W. 907; Guptill v. Verback, 1882, 58 Iowa 98, 12 N.W. 125; Johnson v. Kinney, 1942, 232 Iowa 1016, 7 N.W.2d 188, 144 A.L.R. 997; Keist v. Chicago G. W. R. Co., 1899, 110 Iowa 32, 81 N.W. 181. In a number of cases, the Iowa Supreme Court has held that certain statements and observations have not been privileged because of their lack of pertinecy to treatment or the rendering of other professional service. Blossi v. Chicago & N. W. R. Co., 1909, 144 Iowa 697, 123 N.W. 360, 26 L.R.A.,N.S., 255; Woods v. Town of Lisbon, 1908, 138 Iowa 402, 116 N.W. 143, 16 L.R.A.,N.S., 886, 128 Am.St.Rep. 208; State v. Johnston,1936, 221 Iowa 933, 267 N.W. 698; State v. Masters, 1924, 197 Iowa 1147, 198 N.W. 509; Sutcliffe v. I. S. T. M. Ass'n., 1903, 119 Iowa 220, 93 N.W. 90, 97 Am.St.Rep. 298; City of Cherokee v. Aetna Life Ins. Co., 1933, 215 Iowa 1000, 247 N.W. 495; Nelson v. Nederland Life Ins. Co., 1900, 110 Iowa 600, 81 N.W. 807; Wyland v. Griffith, 1895, 96 Iowa 24, 64 N.W. 673.

In the present case, the statement in question was in no way necessary to be known in order for Dr. O'Connor to "discharge the functions of his profession according to the usual course of practice and discipline," and Van Wie could not have reasonably believed that such a statement could have had pertinency to his treatment. It is the holding of the Court that the statement was not a privileged communication under the Iowa statute in question.

The plaintiff further objected that even if the statement in question be held to be not privileged, it was still not admissible against the plaintiff. The defendant claims that the statement is admissible as a part of the res gestae. The so-called res gestae rule has been the subject of criticism by those eminent in federal courts. In 8 Chicago Law Review, p. 627, reference is made to a statement of Justice Holmes to the effect that "In place of using the term 'res gestae' he preferred to give articulate reasons for his decisions." In the case of United States v. Matot, 2 Cir., 1944, 146 F. 2d 197, 198, in an opinion by Judge Learned Hand, it is stated: ' * * * and as for 'res gestae,' it is a phrase that is accountable for so much confusion that it had best be denied any place whatever in legal terminology; if it means anything but an unwillingness to think at all, what it covers cannot be put in less intelligible terms." See Note, 22 Minnesota Law Review pp. 391-409. See, also, Rule 512 Model Code of Evidence.

While actions under the Federal Tort Claims Act are federal court matters, it is believed that in such actions the law and terminology of the forum should be followed as to res gestae. Under the Iowa law, the statement in question constitutes part of the res gestae. Duncan v. Rhomberg, 1931, 212 Iowa 389, 236 N.W. 638; Skalla v. Daeges, 1944, 234 Iowa 1260, 15 N.W.2d 638; State v. Stafford, 1946, 237 Iowa 780, 23 N.W.2d 832. The tendency of the recent cases has been to extend rather than to restrict the scope of the doctrine. Roushar v. Dixon, 1942, 231 Iowa 993, 2 N.W.2d 660. It is the view of the

Court that the statement is admissible under the res gestae rule. The statement is or is not a declaration against interest depending upon the interpretation given to it. As to declarations against interest, see 31 C.J. S., Evidence, § 217; Weber v. Chicago R. I. & P. Ry. Co., 1915, 175 Iowa 358, 151 N.W. 852, L.R.A.1918A, 626.

The statement, as it stands, seems to possess an element of ambiguity. It is difficult to determine whether or not the "not seeing" pertained to any, all, or any specific segment of what have heretofore been termed the "material moments" preceding the collision. It is possible that Van Wie meant to convey that, while covering the entire distance of the 1,050 feet in which the line of vision from the highway to the intersection stop sign was unbroken, he made no lookout as to the intersection, or that during the time that distance was covered, never saw the Klein car stopped at the intersection. This could create an inference that no lookout was being made by Van Wie in traversing that distance. It is also possible that Van Wie meant to convey that he never saw the Klein car in the fleeting instants in which it started rapidly up the incline onto the highway and collided with his own car. It has heretofore been noted that a failure to have observed a specific point in such a flashing moment was not of itself conclusive of a failure to maintain a proper lookout. Further, under the facts as previously analyzed, the Klein car came onto the highway in such a sudden manner that a failure to observe at that time could not have contributed to the accident as no alternative movement would have been presented to Van Wie but to have taken to the ditch. It is believed that the adverse inference such as this statement might create under an interpretation of it adverse to Van Wie is not sufficient to negative the inference under the no eye-witness rule that Van Wie was in the exercise of due care.

The physical facts in the present case are so bound up with estimates of speeds and distances that they are of little assistance on the issue of contributory negligence. They also do not negative the inference of due care. It is the view of the Court that the plaintiff has established, by the greater weight or preponderance of the evidence, that the decedent Van Wie was free from any negligence which contributed in any manner or in any degree directly to the injuries and damages for which recovery is sought, and that the liability of the United States has been established.

There is next presented the question as to what damages are recoverable and the extent of the recovery under the applicable Iowa law. Section 611.20, Code of Iowa 1946, commonly known as the survival statute, provides as follows: "All causes of action shall survive and may be brought notwithstanding the death of the person entitled or liable to the same." Under that statute, unlike Lord Campbell's Act, no new cause of action is created by the wrongful death, but rather, the cause of action accruing to the injured person survives his death. Gardner v. Beck, 1922, 195 Iowa 62, 189 N.W. 962, 964; Boyle v. Bornholtz, 1937, 224 Iowa 90, 275 N.W. 479; Scott v. Hinman, 1933, 216 Iowa 1126, 249 N.W. 249; Shutes v. Weeks, 1925, 220 Iowa 616, 262 N.W. 518; Anderson v. Strack, 1945, 236 Iowa 1, 17 N.W.2d 719. His administrator or executor is the only party who can maintain an action based upon that surviving cause. Jensen v. C. M. & St. P. Ry. Co., 1924, 198 Iowa 1267, 201 N.W. 34. Section 635.9, Code of Iowa 1946 provides: "When a wrongful act produces death, damages recovered therefor shall be disposed of as personal property belonging to the estate of the deceased, but if the deceased leaves a * * * wife, child, or parent, it shall not be liable for the payment of debts."

The difference between the damages recoverable in an action instituted by the injured party and one instituted by a representative of his estate, is set forth in the case of Boyle v. Bornholtz, supra [224 Iowa 90, 275 N.W. 482]. The court states: "The measure of damages is not the same in actions commenced by the injured party and in actions commenced by his administrator. * * * If brought by the administrator, it is for the purpose of repairing the damages to his estate. In the latter case, the measure of recovery is the reasonable present value of his life to his estate. Union Mill v. Prenzler, 100

48

Iowa 540, 69 N.W. 876; Dwyer v. [Chicago, St. P. & O.] R. R. Co., supra [84 Iowa 479, 51 N.W. 244], Cerny v. Secor, 211 Iowa 1232, 234 N.W. 193; Shutes v. Weeks, 220 Iowa 716, 262 N.W. 518.

"If the action is commenced by the administrator, he cannot recover for loss or pain and suffering sustained by the deceased. Flynn v. [Chicago, Great Western] R. R. Co., 159 Iowa 571, 141 N.W. 401, 45 L.R.A.,N.S., 1098; Dwyer v. [Chicago, St. P. & O.] R. R. Co., 84 Iowa 479, 51 N.W. 244, 35 Am.St.Rep. 322; Droullard v. Rudolph, 207 Iowa 367, 223 N.W. 100."

■ An action under the Iowa death statute is in effect an action only to recover for the benefit of the heirs of the decedent what they might have inherited had the decedent lived out his normal expectancy, and includes none of the pecuniary loss which might have been sustained by the widow of the decedent or his children by his untimely death. In effect, cognizance is only taken of what such decedent might have saved, not on what he might have expended upon his heirs in his lifetime had his life not been cut off untimely. Because of the limited nature of the cause of action accruing to the estate, the measure of damages under the Iowa act are not comparable in amounts to actions for wrongful death under statutes of other states where the cause of action includes other factors of damages or to actions for wrongful death under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq. It is believed that the highest recovery which the Iowa Supreme Court has permitted under the Iowa wrongful death statute is the sum of $14,500 in the case of Scott v. Hinman, 1933, 216 Iowa 1126, 249 N.W. 249. See case of Shutes v. Weeks, supra and cases therein collected as to awards of damages permitted in death cases. The highest recovery made in this federal district under the Iowa statute has been the sum of $15,000. See Kemp v. Creston Transfer Co., D.C.Iowa 1947, 70 F.Supp. 521. In the cases of Scott v. Hinman, supra, and the case of Kemp v. Creston Transfer Co., supra, the decedents were 32 and 33 years of age respectively. In both cases the decedents had impressive earning power, a vital element tending to show what the estate would have accumulated as the measure of damages under wrongful death cases. Andrews v. Y. M. C. A., 1939, 226 Iowa 374, 284 N.W. 186. In general, under the Iowa statute the amount of recovery declines with the advance in years of the decedent, and, where he is quite elderly, the amount of permissible recovery normally decreases accordingly to a small amount.

■ The decedent Van Wie was 63 years of age at the time of his death. According to the Commissioner's 1941 Standard Mortality Table, p. 2214, Code of Iowa 1946, the normal life expectancy of one 63 years of age is 12.69 years. This table is, of course, only a guide of approximation to be used with many other variables tending to show what the longevity of Van Wie would have been had his life not been terminated by the wrongful act. Some of the other evidence in the record tending to show life expectancy to which consideration has been given is the decedent's occupation and its concurrent hazards, his good state of health, and his good personal habits. The Court is of the view that Van Wie had a life expectancy of twelve years at the time of his death.

The measure of damages or loss to his estate will be the amount Van Wie would have accumulated in that twelve years reduced to its present worth. Again, the computation must be the product of many approximations and variables. Consideration has been given to the abilities of the decedent to earn money and to accumulate savings, as indicated by his past accomplishments, taking into account the presence or absence of probable drains on his savings during those twelve years, his general state of affairs as to possession of property and his state of indebtedness at the time of his death, the contingencies of ill health and unemployment, and other factors in evidence tending to show his general capabilities as bearing upon the estate he would have left at the end of the twelve year period.

The record seems to show that Van Wie was an individual of above average capabilities and background. He was not in debt beyond moderate current expenses at the time of his death, and it appears that his accumulations were growing steadily after having, a few years prior to his death, been relieved of the heavy financial burden of aiding in the payment of the medical expenses of an ailing daughter. At the time of his death his total accumulations amounted to approximately $4,000. His salary was at a base rate of approximately $3,100 per year. In addition to this he was receiving commissions of substance and certain expense allowances in his work. His habits and business acumen appear to have been sound and he generally enjoyed the respect of his business associates as an able salesman. The Court is of the view that his accumulations in the twelve years which would have been left to him but for the defendant's wrongful act would have amounted to an average of $700 per year or the amount of $8,400. That amount must be reduced to his present worth by application of the discount rate of a "good sound investment." Stein v. Sharpe, 1940, 229 Iowa 812, 817, 295 N.W. 155, 157. No evidence has been presented as to such a rate in the present case. In Iowa, judicial notice may be taken of the interest rates. Stein v. Sharpe, supra. In the case of In re Kees' Estate, Iowa 1948, 31 N.W.2d 380, 383, the Iowa Supreme Court stated that it took judicial notice that the current yield on investments was not in excess of 2½ per cent. This Court is of the view that the current interest rate on sound investments is 2½ per cent, and that discount rate is to be applied to the amount of $8,400 in this case. Using that percentage rate, it appears that the present worth of a dollar payable twelve years hence is $.743556. Therefore, the present worth of the $8,400 accumulations is $6,245.87.

The Court finds that the fair and reasonable value of the following items is as follows: Medical Services, $300; Hospital Expense, $341.95; Ambulance Service, $3.60; Funeral Expense, $575. The Court finds that the damage caused to the decedent's car by the collision is $520.95.

Under the Iowa rule the personal representatives cannot recover the amount actually expended for a funeral of a decedent. The reasonable cost and value of the materials and services rendered in connection with the funeral are to be determined. Such reasonable cost and value cannot exceed what is reasonable and proper for a person of the decedent's social and financial standing. The personal representatives of the decedent can recover reasonable interest on the amount representing the reasonable cost of the funeral for the period between the date of the death of the decedent and the end of his normal period of expectancy. It is indicated that the amount of such interest which may be recovered cannot exceed the original reasonable cost of the funeral. The theory of recovery is that the estate of the decedent by his untimely death is called upon to make an expenditure immediately which otherwise it would not have had to make until the end of the decedent's normal period of expectancy and that the estate loses the use of the money expended for the period between the death of the decedent and the end of the decedent's normal period of expectancy. The rate of interest allowed to the estate is the fair and reasonable rate. It would seem that the rate of interest to be used is that obtainable on sound investments. The Court has heretofore found that such rate is 2½ per cent. The reasonable value of the funeral expenses being $575, the amount of the interest would be $15.73 per year and interest for twelve years would amount to $188.76. However, since the estate is being presently reimbursed for loss of interest in the future, it is believed that the sum of $188.76 for interest should be reduced to its present worth by annual stops. When so computed the amount of interest recoverable is $159.11.

Under the Iowa rule, only such damages may be awarded as directly and proximately resulted from injuries sustained as a direct result of the negligence of the defendant. Schelldorf v. Cherry, 1935, 220 Iowa 1101, 1106, 264 N.W. 54. The Court finds that under the tests and standards of the Iowa law such direct

damages to which the plaintiff is entitled recovery are as follows:

| | |
|---|---|
| Loss of Accumulations to Estate | $6245.87 |
| Medical Expense | 300.00 |
| Hospital Expense | 341.95 |
| Ambulance Service | 3.60 |
| Interest on Funeral Expense | 159.11 |
| Damage to Car | 520.95 |
| | |
| Total Damages | $7571.48 |

The Federal Tort Claims Act provides, 28 U.S.C.A. § 931 that no interest shall be allowed on claims thereunder prior to judgment. That Act provides further, 28 U.S.C.A. § 932, that the provisions of 28 U.S.C.A. § 765 are to be applicable in regard to the matter of interest on judgments. 28 U.S.C.A. § 765 provides for interest on judgments against the United States of 4 per cent from the date of final judgment or decree "until the time when an appropriation is made for the payment of the judgment or decree." In the present case, the judgment will bear interest as provided by that section. The Federal Tort Claims Act, 28 U.S.C.A. § 932, provides that the provisions of 28 U.S.C.A. § 258 shall be applicable. This latter section relates to the matter of assessment of costs against the United States and provides that the costs which may be assessed against the United States "shall include only what is actually incurred for witnesses, and for summoning the same, and the fees paid to the clerk of the court." In the present case, the costs assessed against the United States shall be those specified in that section. Under the Federal Tort Claims Act, 28 U.S.C.A. § 944, it is provided that the Court rendering a judgment under the Act may as a part of the judgment allow attorneys' fees to the claimant's attorneys to be paid out of the judgment but not in addition thereto. It is further provided in that section that the maximum amount that can be allowed to such attorneys is 20 per cent of the recovery. That section prohibits attorneys charging or collecting for their services in connection with the claim any amounts in excess of those allowed by that section. There will be included in the judgment rendered herein a provision allowing the attorneys for the plaintiff for their fees out of the recovery the sum of $1,250.

Judgment will be entered in accordance with this opinion.