RUSSELL MOWREY, by his next friend, LEE MOWREY, Appellee, v. VAUGHN SCHULZ et al., Appellants.

No. 45474.

MARCH 18, 1941.

Hatter & Harned, for appellants.

Swift & Swift and Wallace & Claypool, for appellee.

OLIVER, J.—On October 31, 1938, at about 5:30 p. m., Russell Mowrey, then aged nine years, while riding his bicycle on Marengo Avenue, in the business district of Marengo, Iowa, was injured in a collision with an automobile. He brought this action at law by Lee Mowrey, his next friend, to recover damages from Vaughn Schulz, the driver, and Malcolm Chevrolet Company and T. H. Malcolm, the owners of said automobile.

Marengo Avenue is a north and south paved street, 48 feet wide from curb to curb, on the east side of which is a 10-foot parking and a cement sidewalk about 5 feet wide. The accident happened when the boy rode his bicycle west into the east part of the avenue from an alley which intersects it at right angles. The east side of the avenue, south of the alley intersection, was filled with automobiles parked perpendicular to the curb, which, in effect, narrowed the portion of the avenue open to travel. Hence, the boy, after emerging from the alley, continued west about 30 feet before he reached the lane of the northbound traffic in the avenue. It was at about this point that the bicycle and defendants' northbound automobile collided. Because of the closely parked cars, the boy on the bicycle was not visible to defendant Schulz until the automobile reached the place where the street was intersected by the alley and apparently the automobile was not previously visible to the boy. The boy was then about the length of a bicycle from the car. Although witnesses for defendants placed the speed of the automobile at 15 to 20 miles per hour, witnesses for plaintiff estimated its speed at 35 miles per hour. The statutory speed limit at that place was 20 miles per hour. When Schulz saw the boy he swerved the car to the left and applied the brakes. As we understand the record the car stopped a few feet north of the alley intersection.

The boy had ridden out of the alley across the sidewalk and into the traveled lane of the avenue without stopping. There was evidence that the boy reduced his speed before the collision and evidence to the contrary.

Defendants' motions for directed verdict were overruled and the case was submitted to jury upon two grounds of alleged negligence: First, unlawful and excessive speed of the car, and second, failure to have it under control and to reduce its speed to a reasonable and proper rate when approaching and traversing the alley intersection. The verdict and judgment were against defendants and they appeal.

Essential to the decision of errors assigned by appellants is the determination of some of the legal rights and duties of vehicular traffic at street and alley intersections, under chapter 251.1 of the 1939 Code, entitled Motor Vehicles and Law of Road. Preliminary thereto, it should be said a person riding a

bicycle is subject to its general provisions (section 5017.07); alleys are highways and right of way means the privilege of the immediate use of the highway. Subsections 45 and 61 of Code section 5000.01.

Code section 5029.13 provides that the driver of a vehicle emerging from an alley, driveway or building shall stop such vehicle immediately prior to driving onto a sidewalk or into the sidewalk area extending across any alleyway or private driveway.

Appellee contends section 5029.13 was enacted solely for the protection of pedestrians using the sidewalk across the alley and not for the benefit of vehicular traffic upon the intersected street, and that the rules governing a vehicle about to enter a street are the same whether the vehicle comes from an alley or another street. In this connection appellee refers to a former statute (section 5035 of 1935 Code) as a highway right-of-way statute and points out certain differences in language and arrangement of the present statutes (enacted in 1937) which he argues evidence a legislative intent to make section 5029.13 a sidewalk pedestrian statute. One defect in this argument and historical review is that it assumes section 5029.13 and other sections of the present law to be amendments or revisions of the former chapter. This is not historically correct. The former chapter 251 was repealed. The present chapter 251.1 is, with various exceptions and changes, merely an enactment of the Uniform Act Regulating Traffic on Highways, which has been adopted by various states. Code section 5029.13 is almost identical with section 49 of the Uniform Act and Code section 5026.05 was apparently taken from subsection a of section 36 of the Uniform Act.

But although its form and language is largely that of the Uniform Act, the present act is in many respects quite similar to the former Iowa act despite differences in language and arrangement. Therefore, where the present act apparently expresses the same thought as the former, mere differences in words or arrangement should not generate an inference of legislative intent to change the former rule.

In view of this historical background we do not agree with appellee that the language of Code section 5029.13 that the

driver shall stop the vehicle emerging from an alley immediately prior to driving onto a sidewalk, etc., when compared with the language of section 5035 of the 1935 Code that vehicles coming from alleys shall stop immediately before entering a public street, justifies the inference that the legislature thereby intended to substantially change the scope of the statute. Nor do we think the changes in the arrangement of the statutory provisions here involved are significant.

Nor do we agree with appellee's contention that the requirement of Code section 5029.13 that the stop shall be made prior to driving upon the sidewalk area indicates the statute is for the protection of pedestrians only. One reason for this requirement that suggests itself is that stop signs are not usually placed at alley entrances. Hence, the sidewalk line can serve to definitely and visibly inform drivers of the place where they are required to stop. Another reason is this would be a proper location for stop signs, if they were required. See Code section 5029.05. To interpret the statute as not designed to protect street as well as sidewalk traffic would give it an unusual meaning and one not in accord with its language. We are satisfied it was designed for the benefit of traffic of every kind, which might be affected by vehicles emerging from alleys.

That this statute is a proper and necessary safety measure is evident. Its scope and aim is clear. The requirement that a driver emerging from an alley stop carries with it the implied duty on his part of using his senses of sight and hearing to ascertain that the way is clear before entering the highway. Wood v. Branning, 215 Iowa 59, 244 N. W. 658; Hunter v. Irwin, 220 Iowa 693, 263 N. W. 34; Hittle v. Jones, 217 Iowa 598, 604, 250 N. W. 689, 692; Shutes v. Weeks, 220 Iowa 616, 262 N. W. 518. And such driver who fails to stop and ascertain that the way is clear before plunging into the street may not by such wrongful act acquire the right of way over other vehicles traveling upon the street in that vicinity. See Dikel v. Mathers, 213 Iowa 76, 81, 238 N. W. 615, 617.

█ Under the record in this case it is clear that Russell Mowrey violated the provisions of Code section 5029.13 in riding his bicycle into the street from the alley without stopping. His view of defendants' automobile, which was then traveling

north was blocked by the parked cars. Had he looked in that direction, he could not have seen the automobile until it was almost directly in front of him. Nor could the driver of the car have seen the boy prior to that time. Russell did not testify as a witness. The only evidence as to the direction he was looking was that he was turned around to the right and appeared to be looking backward as he emerged from the alley and until just before the collision.

All witnesses who saw the vehicles come together testified the bicycle ran into the side of the car. The right side of the car was slightly damaged. True there was evidence (which defendant Schulz denied) that he later said, I didn't see the boy until I was ready to hit him. If I had it to do over again I would try and run into the cars at the side of the street instead of hitting the boy. I saw the boy and could have stopped but thought he was going to turn.

From the evidence of these statements may be drawn the rather equivocal inference that the car struck the boy. But in the face of all the direct and circumstantial evidence that the bicycle came into contact with the side of the car and the absence of evidence to the contrary, it would not be sufficient to justify a finding that the boy or bicycle was struck by the front end of the automobile. Either the bicycle struck the side of the car as the direct evidence indicates, or the side of the car brushed the bicycle as the courses of the vehicles intersected. Under the most favorable view of the evidence rule, the conclusion is inescapable that Russell rode his bicycle into the lane where the car was traveling and against or up to the side of the car.

Assuming that the automobile was traveling at a negligent speed, such negligence was not a proximate cause of the accident. Had the car been traveling at any other rate of speed the accident would have happened if the boy had ridden into its lane of travel as it reached that place. The proximate cause of the accident was the wrongful act of Russell in riding from the entrance of the alley without stopping and continuing into the lane of travel, where he had no legal right to be. The bicycle was first observable by Schulz as he passed the parked cars, which had concealed it from view. It appeared suddenly only

several feet distant from and traveling toward the automobile. It was then so near an accident was inevitable and would likewise have happened had the automobile been traveling slower. The record fails to show any causal connection between the speed of the automobile and the accident. Crutchley v. Bruce, 214 Iowa 731, 240 N. W. 238; Pettijohn v. Weede, 209 Iowa 902, 227 N. W. 824.

Therefore, the motions of defendants for directed verdicts should have been sustained. This error necessitates a reversal. Other errors assigned need not be considered.—Reversed.

HALE, C. J., and SAGER, MITCHELL, GARFIELD, BLISS, WENNERSTRUM, and MILLER, JJ., concur.

STIGER, J., dissents.