**LE MARS MUTUAL INSURANCE COMPANY OF IOWA, Appellant,**

v.

**Robert BONNECROY, Appellee.**

**No. 64866.**

Supreme Court of Iowa.

April 15, 1981.

Terry Huitink, Ireton, for appellant.

R. J. Shea of Smith, Grigg & Shea, Primghar, for appellee.

Considered by HARRIS, P. J., and ALLBEE, McGIVERIN, LARSON, and SCHULTZ, JJ.

SCHULTZ, Justice.

The sole issue involved in this appeal is whether section 351.28, The Code 1977, establishes liability for a dog owner for damage caused by the nonmischievous, nonvicious acts of a dog. This issue arose from an accident involving an automobile owned by Henry and Susan Bents and a dog owned by the appellee, Robert Bonnecroy. The appellant, Le Mars Mutual Insurance Company of Iowa, paid the Bents' insurance claim for damage done to their automobile and sued Bonnecroy. The trial court determined that liability attaches to a dog owner only when the dog has done a mischievous or vicious act and denied Le Mars's claim. We conclude that section 351.28 imposes strict liability for all damages caused by a dog, and we reverse the trial court.

The facts were stipulated before the trial court and are not in dispute. On November 11, 1978, Susan Bents was driving the family automobile on a county highway immediately adjacent to the farmstead of Robert Bonnecroy. As Bents was passing the farmstead, Bonnecroy's adult male dalmation dog was crossing the roadway. A collision occurred between the Bents' vehicle and the dog. The vehicle went in the ditch and was totally demolished. Bonnecroy was not negligent in allowing his dog to be on the roadway, and Bents was not committing an unlawful act. Le Mars Mutual Insurance Company of Iowa, under the terms of its insurance contract with Henry and Susan Bents, paid them for their loss and is the real party in interest in this matter.

The fighting issue in this appeal concerns the types of acts by a dog that will trigger liability under section 351.28. Le Mars contends that any affirmative act that causes damage is sufficient to establish liability. Bonnecroy maintains that a dog's innocent acts do not result in liability. He claims that only mischievous or vicious acts, as specifically set out in section 351.27, The Code 1977, impose liability.

Section 351.27 provides the right to kill a licensed dog:

> It shall be lawful for any person to kill a dog, licensed and wearing a collar with license tag attached, when such dog is caught in the act of worrying, chasing, maiming, or killing any domestic animal or fowl, or when such dog is attacking or attempting to bite a person.

Section 351.28 imposes liability for damages caused by a dog:

> The owner of any dog, whether licensed or unlicensed, shall be liable to the party injured for all damages done by said dog, except when the party damaged is doing an unlawful act, directly contributing to said injury. This section shall not apply to any damage done by a dog affected with hydrophobia unless the owner of such dog had reasonable grounds to know that such dog was afflicted with said malady, and by reasonable effort might have prevented the injury.

These statutes were enacted in 1924 pursuant to an extensive code revision. *See* H.F. 71, 40th G.A., Extra Sess. §§ 82–83 (1923–1924).

Le Mars claims the trial court erred by ignoring the plain language of section 351.-28. It argues that the legislature meant just what it said when it enacted the statute, and the plain meaning of the language imposes liability when an injured party establishes the ownership of the dog and that it caused the injury at issue. Bonnecroy calls our attention to the legislative history of sections 351.27 and .28, and the case law decided thereunder, and points out that sections 351.27 and .28 were originally contained in one statute. He maintains that the legislature merely divided that statute

into two parts using substantially the same language, and that the separation of the right to kill provision and the right to collect damages provision did not change the meaning of the statute or the case law decided thereunder. Bonnecroy also relies on the fact that the 1924 enactment of sections 351.27 and .28 was the result of a massive code revision, and that the preamble to H.F. 71 did not contain any language expressing an intent to change the original statute.

Thus, the parties disagree as to the effect of the 1924 legislation. Although section 351.28 has not been subsequently amended, we have never interpreted that provision in a situation in which the dog was neither attacking a person nor interfering with livestock. We now approach that task, turning first to rules of statutory construction.

■ Our ultimate goal in interpreting statutes is to determine legislative intent. In this endeavor we are aided by certain principles of statutory construction. We consider the language used in the statute, the objects sought to be accomplished, the evils sought to be remedied, and place a reasonable construction on the statute which will best effectuate its purpose. *Crow v. Shaeffer*, 199 N.W.2d 45, 47 (Iowa 1972). If a revised statute is ambiguous or susceptible of two constructions, reference may be made to the prior statute for the purpose of ascertaining intent. *Hanover Insurance Co. v. Alamo Motel*, 264 N.W.2d 774, 778 (Iowa 1978). But mere differences in words or arrangement should not generate an inference of legislative intent to change the former rule. *Mowrey v. Schulz*, 230 Iowa 102, 105, 296 N.W. 822, 823–24 (1941). A revision will not be construed as altering a particular statute absent a clear, unmistakable legislative intent. *Kelly v. Brewer*, 239 N.W.2d 109, 114 (Iowa 1976).

However, legislative history cannot be used to defeat the plain words of a statute. *Grain Processing Corp. v. Train*, 407 F.Supp. 96, 103 (S.D.Iowa 1976).

■ Rules of statutory construction are to be resorted to only when the terms of the statute are ambiguous. *Heins v. City of Cedar Rapids*, 231 N.W.2d 16, 18 (Iowa 1975). Precise and unambiguous language is given its plain and rational meaning as used in conjunction with the subject considered. *Maguire v. Fulton*, 179 N.W.2d 508, 510 (Iowa 1970). Thus, it is not for the court to speculate as to the probable legislative intent apart from the wording used in the statute. *State v. Brustkern*, 170 N.W.2d 389, 392 (Iowa 1969). The court must look to what the legislature said rather than what it should or might have said. Iowa R.App.P. 14(f)(13).

Although we feel that section 351.28 is clear and unambiguous, we will examine Bonnecroy's claims that our case law prior to the 1924 revision, interpreting the similar language contained in the predecessors of sections 351.27 and .28, limited liability to the acts specified in section 351.27.

Bonnecroy correctly asserts that our case law prior to 1924, interpreting the predecessors of sections 351.27 and .28, limited liability to the acts specified in section 351.27. The right to kill and liability statute was originally enacted as 9th G.A., Reg.Sess. ch. 76, § 9 (1862), which provided:

It shall be lawful for any person to kill any dog caught in the act of worrying, maiming or killing any sheep or lambs, or other domestic animal, or any dog attacking or attempting to bite any person outside of the inclosure of the owner, and the owner shall be liable to the party injured for all damages done by his dog.

This provision remained substantially the same until it was divided into two parts by the 1924 code revision.[1] Our cases under

1. *See* § 2284, McClain's Annotated Code 1888:

It shall be lawful for any person to kill any dog caught in the act of worrying, maiming, or killing any sheep or lambs, or other domestic animal, or any dog attacking or attempting to bite any person, and the owner shall be liable to the party injured, for all damages done by his dog, except when the party is doing an unlawful act.

§ 2340, The Code Ann. 1897:

It shall be lawful for any person to kill any dog caught in the act of worrying, maiming

the provision held dog owners absolutely liable regardless of whether or not the owner was negligent or had knowledge of the dog's vicious propensity. *Puls v. Powelson*, 142 Iowa 604, 606, 121 N.W. 1, 1 (1909). The only defenses available were those provided by the statute, and contributory negligence was not a defense. *See Van Bergen v. Eulberg*, 111 Iowa 139, 139, 82 N.W. 483, 483 (1900).

However, absolute liability was limited to situations in which a dog could lawfully be killed under the statute: for worrying, maiming, or killing a domestic animal; and for attacking or attempting to bite a person. Thus, a dog owner was not liable when a team of horses ran away after his dog bit at their heels; the jury was properly instructed to determine whether or not the dog was in the act of worrying or maiming a domestic animal which justified the killing of the dog under the statute. *Miles v. Schrunk*, 139 Iowa 563, 566–69, 117 N.W. 971, 973 (1908). Likewise, when a pedestrian was tripped by a dog that was not attacking or biting, the absolute liability provisions were held not applicable. *Brown v. Moyer*, 186 Iowa 1322, 1326, 171 N.W. 297, 299 (1919). Thus, prior to the legislative revision in 1924, the liability placed on the owner of a dog was limited to situations in which the dog could have been legally killed.

In 1919 the legislature created a code commission to revise the code. 38th G.A.,

Reg.Sess. ch. 50, § 4 (1919). The commission interpreted its duties to be:

1. Compile all the existing statutory law of the state of a permanent and general nature into one volume.

2. Rearrange, revise, and rewrite such portions of the above compilation with *such modifications and additions* as were deemed necessary in order to simplify, clarify, and reduce the body of law into one harmonious whole.

Code Revision Bills, Introduction (1923)(emphasis added). It is apparent from the italicized language that the code commission had authority to make modifications and additions to then-existing statutes. We must determine whether the legislature, by adopting the revised statutes at issue, intended to modify the liability formerly imposed on dog owners.

The enactment of what are now sections 351.27 and .28 repealed section 1851, The Code 1919, which provided:

It shall be lawful for any person to kill any dog caught in the act of worrying, maiming or killing any sheep or lamb, or other domestic animal, or any dog attacking or attempting to bite any person, and the owner shall be liable to the party injured for all damages done, except when the party is doing an unlawful act. The provisions of this section shall not apply to any damage done by a dog affected with hydrophobia.[2]

Section 1851, The Code 1919, contained identical language and remained in effect until repealed by the 1924 enactment.

2. In addition, 39th G.A., Reg.Sess. ch. 140, § 7 (1921), provided:

On and after the 15th day of January, 1922, any dog which has not been licensed as above provided, shall be deemed a wild dog, and it shall be the duty of each peace officer of the state, including the peace officers of the cities and towns, to kill any dog found within the county without a collar and a tag. Any other person may also kill such dog at any time and any licensed dog may be killed if caught in the act of worrying, maiming or killing any domestic animal, or fowl.

or killing any sheep or lamb, or any other domestic animal, or any dog attacking or attempting to bite any person, and the owner shall be liable to the party injured for all damages done by his dog, except when the party is doing an unlawful act. The provisions of this section shall not apply to any damage done by a dog affected with hydrophobia.

§ 2340, The Code Ann. Supp. 1907:

It shall be lawful for any person to kill any dog caught in the act of worrying, maiming or killing any sheep or lamb, or other domestic animal, or any dog attacking or attempting to bite any person, and the owner shall be liable to the party injured for all damages done, except when the party is doing an unlawful act. The provisions of this section shall not apply to any damage done by a dog affected with hydrophobia.

Thus, the same sentence of this statute that authorized the killing of a dog placed liability on the dog's owner for damages caused by the acts justifying the killing. The 1924 revision placed authority for killing a dog in what is currently section 351.27, and the liability of a dog owner was placed in a separate provision, currently section 351.28. The plain language of section 351.28 imposes strict liability on a dog owner for any damage caused by a dog. However, Bonnecroy contends that because sections 351.27 and .28 are both derived from section 1851 they must be construed together.

This court encountered a similar contention in *Bigelow v. Saylor*, 209 Iowa 294, 228 N.W. 279 (1929). Prior to 1924 the statute defining "dog owner" was contained in the licensing and taxation chapter of the code. The revision combined the licensing chapter and the chapter containing the dog-owner-liability statute. It was claimed that the statute defining "dog owner" had no application to the liability statute, and that the former provision retained its prerevision application to licensing only. The court rejected this claim, stating:

> Prior to the enactment of such Chapter 276, as it appears in the Code of 1924, there was a separate statute defining an owner of a dog for the purpose of licensing or taxation, to wit, Chapter 140, Acts of the Thirty-ninth General Assembly. Another separate and distinct statute, to wit, Section 2340, Code of 1897, created the statutory liability of the owner of a dog for damages caused by the dog. It is true that these two provisions of the statutes were then entirely separate and distinct. One defined an owner for purposes of licensing and taxation, and that definition had no relation to the definition of an owner for the statutory liability for damages caused by the dog. However, the legislature brought these two sections into one chapter, to wit, Chapter 276, and did so by a distinct and separate legislative enactment, to wit, House File 71 of the Acts of the Fortieth Extra General Assembly. Section 5421 of the Code of 1924 was Section 54 of said act, and Section 5450 was Section 83 of said act.

There was an express legislative enactment amending and repealing the former statutes and enacting said Chapter 276 in lieu thereof. Appellees argue that the bringing of these two sections into one chapter was a mere compilation by the code editor. It was nothing of the kind. It was a re-enactment by the general assembly of the statutes referred to, a repeal of the former statutes, and *the creation of entirely new legislation*. An examination of the original bill, House File 71, Acts of the Fortieth Extra General Assembly, makes this perfectly clear. The appellant made a prima-facie case of statutory liability on the part of the appellees, under the record, as being owners of the dog in question, within the terms and provisions of Section 5421 of the Code.

*Id.* at 295–96, 228 N.W. at 280 (emphasis added). We believe the same reasoning is applicable to the case at hand.

■ In *Bigelow* the statute defining "dog owner" acquired an expanded application even though the language of the provision was not altered when it was combined with the liability statute. Similarly, section 351.-28 received a new format when it was separated from the "right to kill" portion of section 1851. Section 351.28 also contains new language; the term "owner" is expressly expanded by the insertion of the modifying phrase "of any dog." Moreover, the preamble to the revision states that the purpose of the enactment was to amend, revise, and codify existing legislation relating to dogs and responsibility therefor. The new format, combined with the new language and statement of purpose, evinces an intent on the part of the legislature to create entirely new legislation and vitiates the rule of construction that mere differences in words or arrangements should not generate an inference of legislative intent to change a former rule.

In addition to his contentions concerning the effect of the 1924 revision, Bonnecroy cites us Wisconsin authority dealing with the effect of their liability statute on the common law. At common law a dog owner

was not liable for the acts of a dog on the highway unless the dog was vicious in that it molested or interfered with travelers on the highway and the owner knew or should have known of such propensities. 61A C.J.S. *Motor Vehicles* § 565 (1970); *accord, Brown v. Moyer*, 186 Iowa 1322, 1325, 171 N.W. 297, 298 (1919); 4 Am.Jur.2d *Animals* §§ 115–116 (1962). In *Schraeder v. Koopman*, 190 Wis. 459, 461, 209 N.W. 714, 714 (1926), the Wisconsin Supreme Court held that Wisconsin's dog-owner-liability statute was not applicable when a motorist ran into a dog on a highway, and an innocent act of the dog, not a vicious or mischievous act, caused the damage. The statute at issue in *Schraeder* reads:

> The owner or keeper of any dog which shall have injured or caused the injury of any person or property or killed, wounded or worried any horses, cattle, sheep or lambs, shall be liable to the person so injured and the owner of such animals for all damages so done, *without proving notice of the owner or keeper of such dog or knowledge by him that his dog was mischievous or disposed to kill, wound or worry* horses, cattle, sheep or lambs.

*Id.* at 459, 209 N.W. at 714 (quoting Wis. Stat. § 714.02) (emphasis added). Although the trial court found *Schraeder* persuasive, the case is inapposite because, as the italicized language indicates, the statute was intended to abrogate the common-law requirement of proof of knowledge on the part of the owner but not proof of mischievous or vicious acts of the dog.

Bonnecroy also relies on the construction given to the New Hampshire dog-owner-liability statute, which is similar to our statute. In *Noyes v. Labrecque*, 106 N.H. 357, 358, 211 A.2d 421, 422 (1965), the New Hampshire Supreme Court held that New Hampshire's statute was enacted only to eliminate the difficulty of showing the owner's knowledge of the vicious propensities of a dog, as required at common law, and was not intended to impose liability in situations in which no vicious or mischievous acts of the dog occurred.

Other states have imposed strict liability under statutes imposing liability on the owner of a dog, however. *See, e. g., Kowal v. Archibald*, 148 Conn. 125, 128–30, 167 A.2d 859, 861–62 (1961) (owner liable when his dog jumped up on pedestrian knocking him down); *Granniss v. Weber*, 107 Conn. 622, 628–30, 141 A. 877, 879 (1928) (owner held liable when his dog jumped in front of automobile causing it to swerve and overturn); *Mapoles v. Mapoles*, 350 So.2d 1137, 1138 (Fla.Dist.Ct.App.1977), *cert. denied*, 364 So.2d 888 (Fla.1978) (owner of St. Bernard dog held liable when loaded gun in automobile with dog discharged when touched by dog); *Allstate Insurance Co. v. Greenstein*, 308 So.2d 561, 563 (Fla.Dist.Ct. App.1975) (dog ran onto road causing car to swerve and hit power pole; court held dog owner liable because dog took affirmative action); *Taylor v. Hull*, 7 Ill.App.3d 218, 219–20, 287 N.E.2d 167, 168 (1972) (jury question engendered and automobile motorist could recover from dog owner if dog trotted across road causing automobile to go out of control and overturn); *Tasker v. Arey*, 114 Me. 551, 551, 96 A. 737, 738 (1916) (owner held liable when dog sprang in front of automobile causing it to swerve and turn over); *Neulist v. Victor*, 3 Ohio App.2d 88, 89–90, 209 N.E.2d 494, 496 (1965) (jury question engendered when eight-year-old child on bicycle became frightened by defendant's dog fighting with another dog and crossed street and was hit by automobile); *Hirschauer v. Davis*, 163 Ohio St. 105, 107–08, 126 N.E.2d 337, 339 (1955) (dog owner held liable when truck driver hit dog and lost control of vehicle).

█ Section 351.28 imposes liability on a dog owner for all damages done by a dog. The language of the statute is plain and unambiguous; it does not purport to limit its application to the situations specified in section 351.27. We believe we should look to what the legislature said and not speculate on a meaning apart from the language used.

█ We have examined all arguments advanced by Bonnecroy and find them to be without merit. We therefore hold that sec-

tion 351.28 imposes strict liability on a dog owner for all damages caused by a dog. The trial court erred in ruling that a dog owner is liable only for the mischievous or vicious acts of a dog. Accordingly, the decision of the trial court is reversed and remanded for proceedings consistent with this opinion.

REVERSED AND REMANDED.