**Kelly JOHNSON and Joyce Johnson, Kelly Johnson, as Executor of the Estate of Ryan Johnson, and Marvin Trenary and Nancy Trenary, Individually and as Parents of Cory Trenary, Appellants,**

v.

**Marvin E. JOHNSON, Appellee.**

No. 96–296.

Supreme Court of Iowa.

June 18, 1997.

---

J. Russell Hixson of Dickinson, Mackaman, Tyler & Hagen, P.C., Des Moines, for appellants.

James P. McGuire and James T. Fitzsimmons of McGuire Law Firm, P.C., Mason City, for appellee.

Considered by McGIVERIN, C.J., and HARRIS, LAVORATO, NEUMAN, and TERNUS, JJ.

LAVORATO, Justice.

Iowa Code section 321G.18 (1993) provides that "[t]he owner and operator of an all-terrain vehicle ... is liable for any injury or damage occasioned by the negligent operation of the all-terrain vehicle...." This personal injury action was brought for the death of one child and the injury of another resulting from the negligence of an all-terrain vehicle operator. The district court instructed the jury that the all-terrain vehicle owner's liability was limited by the consent provisions of Iowa Code section 321.493. The jury found that the owner was not liable because the operator exceeded the consent limitation the owner imposed on the use of the all-terrain vehicle. On appeal the plaintiffs contend the district court erred in limiting the owner's liability through the consent provisions of section 321.493. We agree and reverse and remand for a new trial.

Marvin B. Johnson purchased an all-terrain vehicle (ATV) on August 2, 1993. The next day, Johnson allowed his twelve-year-old son, Dallas, to operate the vehicle. Although the evidence was conflicting, the jury

could find that Marvin limited his consent to his son's use of the vehicle in their yard or in a school yard across the road from their home. Two of Dallas' friends, Ryan Johnson and Cory Trenary, rode with Dallas as passengers on the ATV. Several miles away from his home, Dallas was unable to complete a turn at an intersection, and the ATV turned over into a ditch. Ryan was killed and Cory was injured.

Ryan's parents and Cory's parents sued Marvin. They alleged that Marvin, as the owner of the ATV, was liable for the accident and therefore liable for Ryan's death and Cory's injuries.

The plaintiffs submitted a proposed marshalling instruction that in essence imposed liability for Dallas' negligence on Marvin as the owner of the ATV. The plaintiffs' proposed instructions made no mention of Iowa Code section 321.493, which makes the owner of a motor vehicle liable for the negligence of the driver when the vehicle is driven with the consent of the owner. The plaintiffs interpreted Iowa Code section 321G.18, regarding ATVs, as imposing liability on the owner for the negligent operation of the vehicle regardless of section 321.493.

The district court saw the issue differently and over the plaintiffs' objections gave the following jury instructions:

**Instruction No. 21**

Plaintiffs claim that defendant, Marvin Johnson, was negligent as the owner of the ATV. When damage is done by an ATV by reason of the negligent operation of the ATV by the owner or the operator, the owner is liable for any injury or damage caused. (This is the relevant portion of the plaintiffs' proposed marshalling instruction.)

**Instruction No. 23**

In all cases where damage is done by any ATV by reason of negligence of the driver, and driven with the consent of the owner, the owner of the ATV shall be liable for such damage.

Consent of the owner may be express or implied from the circumstances involved. Consent of the owner may also be reason-ably conditioned or restricted to time, or place, or purpose.

**Instruction No. 24**

If you find that Dallas Johnson was given consent to drive the ATV on August 3, 1993, only in the Johnson yard or the school yard across the street, then Marvin Johnson, as owner of the ATV, may not be exposed to liability for Dallas Johnson's negligence if Dallas Johnson operated the ATV beyond the limited consent granted him.

In giving instructions 23 and 24, the court relied on *Briner v. Hyslop*, 337 N.W.2d 858, 870 (Iowa 1983). *Briner* holds that an owner of a motor vehicle may condition the owner's consent by prescribing the time, place, or purpose for which the motor vehicle can be used and thereby limit the owner's liability for the driver's negligence. *Briner*, 337 N.W.2d at 870. The owner, however, cannot avoid liability by conditioning consent upon the manner of use. *Id.*

The district court submitted the following jury forms to the jury:

**Question A:** Did Marvin Johnson reasonably condition or restrict his consent to allow Dallas Johnson to operate the ATV as to place?

**Question B:** Did Dallas Johnson operate the ATV beyond the scope of consent given by Marvin Johnson?

The district court also instructed the jury that if they answered "yes" to both questions A and B, they were not to answer any further questions, meaning that Marvin could not be held liable. The jury answered "yes" to both questions.

In their appeal, the plaintiffs contend that the district court erred when it instructed the jury that Marvin could escape liability by conditioning or restricting the consent given to Dallas to operate the ATV. In support of their contention, they argue that the consent provision under Iowa Code section 321.493 is inconsistent and irreconcilable with the "strict" liability imposed upon the owner of an ATV under Iowa Code section 321G.18.

■ We review jury instructions for correction of errors at law. *Vaughan v. Must,*

*Inc.,* 542 N.W.2d 533, 539 (Iowa 1996). We reverse only if the error in giving or refusing the instruction is prejudicial. *Id.*

The two relevant code sections are section 321G.18 and section 321.493. Iowa Code section 321G.18 provides: "The owner and operator of an all-terrain vehicle or snowmobile is liable for any injury or damage occasioned by the negligent operation of the all-terrain vehicle or snowmobile." Iowa Code section 321.493 provides in relevant part: "In all cases where damage is done by any motor vehicle by reason of negligence of the driver, and driven with the consent of the owner, the owner of the motor vehicle shall be liable for such damage."

The district court's reasoning for conditioning section 321G.18 with the consent provision of section 321.493 was as follows: (1) section 321G.18 is unclear and ambiguous because it is grammatically incorrect to use "*is* liable" rather than "*are* liable" when referring to both owners and operators; (2) because 321G.18 is ambiguous and both statutes "cover the same ground" of motor vehicle liability, then they should be read *in pari materia;* (3) read *in pari materia* and as "one system," the "consent requirement under section 321.493 supplements the provisions of section 321G.18"; and (4) "[i]f the legislature had intended to exclude all-terrain vehicles from its definition of motor vehicles under Iowa Code section 321.493, it could easily have done so by providing limiting language therein."

Referring to the language in section 321G.18 that the district court considered to be grammatically incorrect, the court said:

What initially strikes the court is that the statute, on its face, is grammatically incorrect. A grammatically correct statute would provide that the owner and operator of an all-terrain vehicle or snowmobile "*are* liable." As written, the court does find that the statute is ambiguous. The court initially finds that the terms of Iowa Code section 321G.18 are not clear: Does the owner have to be the operator in order to engender liability for the negligent operation of the ATV? Are both the owner *and* the operator liable for the negligent operation of the ATV? By using the word "is"

instead of "are" liable, the court is left to speculate and the statute is therefore susceptible of two meanings.

▇▇▇▇ Well-recognized rules of statutory construction guide our analysis. In interpreting statutes, our ultimate goal is to determine what the legislature intended. *Le Mars Mut. Ins. Co. v. Bonnecroy,* 304 N.W.2d 422, 424 (Iowa 1981). Generally, we are to use rules of statutory construction as aids in determining legislative intent only when the terms of the statute are ambiguous. *Id.* We are to give precise and unambiguous language its plain and rational meaning as used in conjunction with the subject considered. We are therefore not to speculate as to the probable legislative intent apart from the wording used in the statute. *Id.* We must look to what the legislature said rather than what it should or might have said. Iowa R.App. P. 14(f)(13); *LeMars Mut. Ins. Co.,* 304 N.W.2d at 424. "A statute is ambiguous if reasonable minds could differ or be uncertain as to the meaning of the statute." *Holiday Inns Franchising, Inc. v. Branstad,* 537 N.W.2d 724, 728 (Iowa 1995).

▇▇▇ Although generally we are not to resort to aids in construing a statute that is plain, we are not foreclosed from using aids that are available to construe words in the statute. 2A Norman J. Singer, *Sutherland Statutory Construction* § 46.04, at 98 (5th ed.1992). Iowa Code chapter 4 (Construction of Statutes) provides one such aid pertinent to our analysis. Iowa Code section 4.1 captioned "Rules" provides that "[i]n the construction of statutes, the following rules shall be observed, unless such construction would be inconsistent with the manifest intent of the general assembly, or repugnant to the context of the statute. . . ." One such rule is found in Iowa Code section 4.1(17), which mandates that "[u]nless otherwise specifically provided by law the singular includes the plural, and the plural includes the singular." Additionally, we may disregard technical rules of grammar when necessary to arrive at legislative intent. *State ex rel. Winterfield v. Hardin County Rural Elec. Coop.,* 226 Iowa 896, 916, 285 N.W. 219, 229 (1939).

The "Iowa Bill Drafting Guide and Style Manual" (Guide) adopted by the Legislative Council pursuant to Iowa Code sections 2.42 and 3.2 provides that "certain words will in most cases suffice to cover a number of situations." One example the Guide gives is that "the singular incorporates the plural, and the plural incorporates the singular." The example is, of course, consistent with section 4.1(17).

Applying the foregoing principles, we do not think that the grammatical error "is liable" in section 321G.18 makes that provision ambiguous. According to Iowa Code section 4.1(17), "is liable" includes "are liable." Apart from section 4.1(17), we may ignore the grammatical error to arrive at what the legislature meant. We see nothing in Iowa Code chapter 321G that interpreting "is liable" as "are liable" is inconsistent with legislative intent or repugnant to the context of section 321G.18. Nor do we find that any other provision of law mandates a different interpretation.

Inserting "are liable" for "is liable" in section 321G.18 makes the provision read this way:

> The owner and operator of an all-terrain vehicle or snowmobile are liable for any injury or damage occasioned by the negligent operation of the all-terrain vehicle or snowmobile.

Read in this light, this provision unambiguously makes both the owner and the operator liable for any injury or damage occasioned by the negligent operation of the ATV without any limitation. Reasonable minds would not differ or be uncertain as to this meaning. To give this section the interpretation the district court gave it, we would have to add the following clause to the beginning of section 321G.18: "subject to the provisions of Iowa Code section 321.493." Doing so would violate another rule of statutory construction that forbids a court under the guise of statutory interpretation from enlarging the terms of a statute. *Krull v. Thermogas Co.*, 522 N.W.2d 607, 612 (Iowa 1994).

Legislative history pertaining to section 321G.18 supports the unambiguous meaning that an ATV owner is liable for the operator's negligence without limitation. The

Iowa legislature enacted Iowa Code chapter 321G into law in 1971. *See* 1971 Iowa Acts ch. 1077. At that time, chapter 321G covered only snowmobiles. Iowa Code section 321G.11(3)—the predecessor to section 321G.18—provided: "The owner and operator of any snowmobile shall be liable for any injury or damage occasioned by the negligent operation of such snowmobile." The 1971 version, therefore, used the language "shall be liable" rather than "is liable" contained in the present code provision. Section 321G.11(3) (1971) was grammatically correct and clearly imposed liability without limitation on snowmobile owners for the operator's negligence.

In 1989 the legislature added ATVs to chapter 321G. *See* 1989 Iowa Acts ch. 244. In the process, section 321G.11(3) was changed to section 321G.18 and was amended to read as follows:

> The owner and operator of *an all-terrain vehicle or* snowmobile *is* liable for any injury or damage occasioned by the negligent operation of *the all-terrain vehicle or* snowmobile.

By changing "shall be liable" to "is liable," the legislature was simply making a technical change rather than a substantive one. The Guide earlier referred to provides support for this conclusion; it instructs bill drafters to use the word "is" in place of the words "shall be." The Guide gives the following example: "Use 'a violation of this provision *is* a misdemeanor,' rather than 'a violation of this provision *shall be* a misdemeanor.' "

We conclude that (1) section 321G.18 makes owners liable for any injury or damage occasioned by the negligent operation of an ATV and (2) the provisions of section 321.493 do not limit that liability.

It is true, as Marvin points out, that Iowa Code section 321.1(4) defines an ATV as "a motor vehicle designed to travel on three or more wheels and designed primarily for off-road use. . . ." We are, however, not as convinced as Marvin that this definition means that ATVs are subject to all of the provisions of chapter 321, including the consent provisions of section 321.493. We agree with the plaintiffs that it was necessary to define

ATVs in chapter 321 for the purposes of applying Iowa Code section 321.234A. Section 321.234A requires that "[a]ll-terrain vehicles shall be operated on a highway only between sunrise and sunset and only when the operation on the highway is incidental to the vehicle's use for agricultural purposes."

We find more persuasive the plaintiffs' argument that it was not necessary to add all-terrain vehicles to the liability provision of section 321G.18 in 1988 if the legislature intended for ATV owners to *remain* subject to the consent limitation in section 321.493. The ATV owners were already subject to the consent limitation, and the legislature was well aware of that fact.

Additionally, we think the controversy surrounding ATVs when the Iowa legislature added ATVs to section 321G.18 supports the conclusion we reach. Commencing in 1985, the federal government had been attempting to gain a judicial declaration that ATVs were an "imminently hazardous consumer product" under the Consumer Product Safety Act. *See Consumer Fed'n of Am. v. Consumer Prod. Safety Comm'n,* 990 F.2d 1298, 1300 (D.C.Cir.1993). This action was prompted by the growing number of injuries and deaths resulting from the use of ATVs. *Id.* In addition, the federal government was concerned about children under the age of sixteen using adult-sized ATVs. This concern prompted the government to consider banning the sale of adult-sized ATVs for use by children under the age of sixteen. Apparently, the Iowa legislature chose to address the problem by making ATV owners liable for the negligence of the operators without the consent limitation in section 321.493.

Marvin poses a hypothetical about a thief injuring a person with a stolen ATV. He doubts that the legislature intended the owner to be responsible under such facts and for that reason suggests we should conclude that the consent limitation in section 321.493 should apply to ATV owners. We express no opinion on the result we would reach under such a scenario. Suffice it to say those are not the facts in this case.

■ Our interpretation of section 321G.18 leads us to conclude that the district court erroneously instructed the jury that Marvin could escape liability by conditioning or restricting the consent he gave to his son to operate the ATV. The answers the jury gave to jury forms A and B make clear that the erroneous instructions were prejudicial. Because the error was prejudicial, we reverse and remand for a new trial.

**REVERSED AND REMANDED FOR A NEW TRIAL.**